Nathaniel Ford DORSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 45220.

Court of Criminal Appeals of Texas.

Oct. 11, 1972.

**570**

Russell G. Burwell, of Simpson & Morgan, Texas City, for appellant.

Jules Damiani, Jr., Dist. Atty., and R. L. Wilson, Asst. Dist. Atty., Galveston, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of robbery by assault; punishment was assessed at 15 years.

The evidence shows that at about 4:00 or 4:30 P.M. on August 1, 1970, the appellant entered Al's Shopping Center in Texas City. Michael Harris Leitner, the 18 year old son of the owner of the store, was working there on that day. He observed the appellant in the store for 20 to 30 minutes, after which time the appellant approached him and told him he had a gun and wanted all the cash money in the store. Leitner placed approximately $80.00 in a paper sack which the appellant snatched from him. The appellant fled from the store with the money and disappeared between two houses to the rear of the store. Leitner testified that he was afraid the appellant would shoot him, and although he did not see a weapon, appellant kept patting a bulge under his shirt indicating it was a gun. The appellant was arrested six days later.

Three grounds of error are alleged, the first being that the identification of the appellant by the complaining witness was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The record reflects that following his reporting of the robbery, Leitner was called to the police station to examine some photographs. Of the five photographs shown him, two were of the appellant. This procedure would seem to suggest that the person who appeared twice must either be the suspect, or at least the man whom the police believe to be the suspect, and ordinarily we would agree.

However, because the photographs are in the record, we are able to view them to

determine whether this unusual and questionable procedure was in this case impermissibly suggestive.

One of the pictures of the appellant was taken when he was much younger. Also, appellant's hair was worn differently in the two photographs. All five pictures were placed face down on a table and Leitner was asked to look at them to see if any were of the person who robbed him. He was not told that there were two photographs of the appellant.

Since there is such a disparity between the two photographs, the fact that Leitner picked both out of the group seems to strengthen rather than weaken his identification.

■ We need not pass on whether such photographic identification was impermissibly suggestive since we base our decision herein on the ground that the complaining witness made an in-court identification of the appellant based upon independent observations at the time of the offense. We quote from the complaining witness' testimony:

"Q. MR. LEITNER, how long was the robber in the store?

A. Between 20 and 30 minutes.

Q. And what time of day was this?

A. It was in the afternoon, around 4:00 or 4:30.

Q. Were the lights on in the store?

A. Yes, sir, all the lights were on.

Q. Was it a sunshiny day or a cloudy day?

A. Sunshiny day.

Q. How well could you see other persons in the store?

A. Perfectly.

Q. How long did you observe the robber?

A. All the time he was in it. I was face to face with him.

Q. How close did you get to him?

A. Right up to his face. I asked him if I could help him.

Q. Where were you at this time?

A. In the front of the store by the magazines.

Q. How far was he from you in inches, would you say?

A. Six to twelve inches, real close.

Q. Did you get a good look at him?

A. Yes, sir.

. . . . . .

Q. Is your identification based upon any suggestion by the police?

A. No, sir.

Q. Is your identification of the defendant today based on any showing of any photographs by the police?

A. No, sir. They never showed me any. They just laid them out.

Q. Is your identification based on that or of your own independent judgment of during the robbery and before?

A. During the robbery. The main time.

Q. All right, sir. Is your identification based in any part on the suggestion of the police?

A. No, sir."

Also, the record shows that the complaining witness knew the appellant and, although he did not know his name, had known him for some time. Quoting further from his testimony we find the following:

"Q. When was the first time—when is the first time that you can recall seeing Nathaniel Ford Dorsey?

A. Well, it has been a long time. I mean, it's back when I was working at the store with my father, when my father was alive. I haven't seen him about the last couple of years when my father died.

Q. When did your father pass away?

A. May of '68.

. . . . . .

Q. Approximately how many times would you say that you had seen Mr. Dorsey prior to this robbery?

A. I don't know. Just every day acquaintance. I mean, just seeing him on the street because he lived there in the neighborhood, one block down.

Q. Did you know him by name?

A. Not really. I mean, not that well, just seeing him. When you see somebody every day, you know them.

Q. You said that you had seen him with someone?

A. Yes, sir.

Q. Is that correct?

A. His grandfather.

Q. Did you know that person by name?

A. Yes, sir."

We conclude that, considering the record in its entirety, there is nothing to indicate that the in-court identification of appellant was the result of any suggestive influence of the police and therefore "tainted."

Prior to admitting the in-court identification the trial judge conducted a separate hearing as recommended in Martinez v. State, Tex.Cr.App., 437 S.W.2d 842, and thereafter filed written findings of fact and conclusions of law. He concluded that

the in-court identification was based "solely" upon the observations at the time of the alleged offense and that it was not "tainted" by the photographic identification. We agree. See Glover v. State, Tex.Cr.App., 470 S.W.2d 688; Johnson v. State, Tex.Cr.App., 462 S.W.2d 955.

Next, appellant complains "of the remoteness of the two prior convictions used to impeach him" at the guilt stage of this trial (1971).

On cross-examination appellant testified and admitted a 1968 conviction for burglary committed in 1967. Then, in the absence of the jury, it was established that the appellant was convicted on January 15, 1957, of the offense of robbery by assault and was placed on probation. Subsequently, on June 6, 1957, he was convicted of "burglary" and his probation was revoked, apparently at the same time. He was shown to have been released from confinement on April 4, 1961. Thereafter, in the jury's presence, the facts of these three convictions were elicited from him on cross-examination.

 In determining remoteness of prior convictions for use in impeachment time is considered to run from the date of release from prison. See Bustillos v. State, Tex.Cr.App., 464 S.W.2d 118. In view of the dates established and appellant's lack of reformation, we conclude that the court did not err in permitting appellant's impeachment by use of such prior convictions on the grounds of remoteness.

Appellant also seeks to advance the claim that his 1957 robbery conviction was improperly used for impeachment since, at the time of the revocation of probation he was indigent and without counsel.[1] He so testified in the absence of the jury and failed to establish that he did not waive counsel at the time he related he plead "guilty" to the revocation motion. When

[1]. The appellant testified that Attorney Cashin represented him at his robbery trial on January 15, 1957, and that At- torney Baker represented him as retained counsel at the time of his 1968 burglary conviction.

this claim was urged the record evidence of all appellant's convictions was proffered for the trial judge's inspection, but these were not introduced into evidence.

 It is true that the use of a prior void conviction for impeachment purposes may deprive a defendant of due process *if its use might have influenced the outcome of the case.* Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374. If the conviction here was void we cannot conclude that its use influenced the outcome of the case. Cf. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Hoover v. Beto, 467 F.2d 516, 5th Cir. (8–9–72).

Finally, appellant contends that his confession which was introduced into evidence was involuntary.

Appellant has not briefed this ground of error nor has he cited any authorities in support of his contention. His brief states only that "although he was warned in accordance with the law, he was beaten and coerced and would not have confessed to this crime but for the same, and the trial court committed reversible error in admitting said confession." Such does not comply with Article 40.09, Sec. 9, Vernon's Ann.C.C.P. However, we will briefly discuss such ground of error "in the interest of justice," under Section 13 of Article 40.09, supra.

 The record reveals that three separate *Miranda* warnings were given to the appellant after his arrest. He was given an opportunity to call his lawyer and declined to do so. At the trial, the court held a Jackson v. Denno[2] hearing outside the presence of the jury and entered written findings of fact and conclusions that the confession had been voluntarily given. At such hearing the police officers denied using any force, threats or violence against

the appellant and testified that the confession was voluntarily made. The court submitted the issue of voluntariness to the jury who resolved such issue against the appellant. We conclude that the confession was voluntarily given and no reversible error has been shown.

The judgment is affirmed.

---

2. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. See also the requirements of Article 38.22, V.A.C.C.P.