Sherman **BEDFORD, Jr.,** Appellant,

v.

**The STATE of Texas, Appellee.**

No. 47355.

Court of Criminal Appeals of Texas.

Nov. 28, 1973.

Bluford B. Sanders, Jr., El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and William B. Hardie, Jr., Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

A jury convicted appellant of, and assessed his punishment at 22 years for, the offense of robbery by firearms. The sole question is whether the trial court erred in finding, and we determine the court correctly found, that the in-court identification of appellant did not result from an impermissibly suggestive photograph or line-up.

At about 1:30 p. m. on October 9, 1971, while Raul Victor Carrillo was engaged in delivering beer in the City of El Paso, he was approached on the sidewalk by a Negro man. This man exhibited and asked Carrillo if he knew the value of a Canadian nickel. Carrillo suggested to the man that he inquire in a nearby store, and the man departed. Shortly thereafter as Carrillo was closing the doors on his beer truck, he was again approached by the same Negro man. This time the man held a revolver in his hand. He told Carrillo to go to the back of the truck where the man took approximately $220.00 from Carrillo. Carrillo was directed to walk in a designated direction and, after doing so, Carrillo turned and saw the man getting into an automobile. Assisted by a passing motorist, Carrillo gave chase, but the robber eluded them.

Carrillo reported the robbery to the police, furnishing a description of the robber and the automobile, including its license number. Appellant was arrested for the offense.

As the jury trial proceedings approached the point where Carrillo would be asked to make an in-court identification of the robber, the trial judge, properly and pursuant to a motion, retired the jury and heard testimony bearing on Carrillo's identification of appellant as the robber. Following the

hearing, the trial judge found and ruled that Carrillo's in-court identification of appellant was admissible before the jury. It is this ruling that appellant attacks on the ground that Carrillo's in-court identification is tainted by a suggestive photograph of, and a line-up including, the appellant.

In the non-jury hearing, it was shown that the police connected the name Sherman Bedford with the automobile license number reported by Carrillo. Three or four weeks following the robbery, Carrillo was requested to report to the police station to look at some photographs. After being shown four photographs of Negro men, one of which was that of appellant, Carrillo selected the photograph of appellant as that of the man who had robbed him. On that occasion, a police officer prepared a supplemental police report containing the information that Carrillo said he had been notified to come to the station to view some photos of a suspect in custody in San Antonio; however, the officer was not sure whether Carrillo actually made that statement or the officer had entered the information from his own knowledge of appellant's custody. Carrillo testified that it was only after, and not before, he had selected the photograph of appellant that he was told appellant was in custody of the San Antonio police.

In the district attorney's office on November 6, 1972, Carrillo was shown three of the four photographs he had seen approximately a year earlier at the police station. From these three, he again picked the photograph of appellant. Two days later Carrillo attended a police line-up in which appellant, represented and assisted by counsel, appeared with five other Negro males. Carrillo identified the appellant in the line-up.

Carrillo made an in-court identification of appellant. He acknowledged that he identified appellant as the same man who "held (him) up" and as the same man he "picked out from photographs and . . . from a line-up."

■ Appellant recognizes that even where the pre-trial identification from photographs and line-ups is impermissibly suggestive, the in-court identification testimony is admissible if the record clearly reveals the identification was made from a prior independent observation. Benson v. State, 487 S.W.2d 117 (Tex.Cr.App.1972); Ward v. State, 474 S.W.2d 471 (Tex.Cr. App.1971). However, he contends that the testimony of the prosecuting witness shows that his in-court identification testimony was so tainted by the suggestive photograph and line-up as to make the in-court identification testimony inadmissible. In support of this contention, appellant cites only the following from the cross-examination of Carrillo:

"Q Mr. Carrillo, I ask you whether or not, and please be perfectly honest with me, the main thing that is helping you, that has aided you in identifying Mr. Bedford today in Court, is the fact that you've seen this photograph of him two or three times in the past and the line-up.

"A True."

\*    \*    \*    \*    \*    \*

"Q And again, you've been greatly aided in your identification of Mr. Bedford today in Court because you viewed these photographs and the line-up.

"A True."

\*    \*    \*    \*    \*    \*

"Q Isn't it a fact that viewing that photograph of Mr. Bedford aided you in identifying him at the line-up?

"A True.

"Q And isn't it a fact that viewing those photographs of Mr. Bedford, plus viewing the line-up, is a great aid to you in identifying him in Court today?"

\*    \*    \*    \*    \*    \*

"A Yes."

We do not deem the contention to be sustainable. Notwithstanding the immediate impression imparted by the isolated testimony quoted, it must be weighed in its context with the totality of the evidence on which the trial judge based his ruling. The cross-examination immediately preceding that cited and relied on by appellant reads:

"Q All right. And now, isn't it true that one of the essential reasons you were able to identify Mr. Bedford at the line-up last week was because a few days prior to the line-up you again viewed that photograph, Defense Exhibit 1 of Mr. Bedford.

"A I had viewed the photograph, but still not on account I had seen the picture, on account I had a certain person on my mind.

"Q All right. But isn't it true that this certain person, his image, was on your mind so clearly because you had seen these photographs twice?

"A Well, the first time I saw the photograph, if I hadn't had the person so much on my mind at the time maybe I wouldn't have been able to pick up the photograph."

Moreover, interposed between the last question and answer quoted by appellant, the record reveals the following answer was first given to the question:

"A Well, I can't say no because I've seen him, I know what he looks like. It came back to my mind exactly everything, so what else could I say?"

Furthermore, the prosecution's examination of Carrillo elicited the following:

"Q All right, sir. And you've told us that you had a picture in your mind of the person who held you up on October 9, 1971.

"A True.

"Q All right, sir. When you viewed a photograph at the Police Department on October 21, 1971, did you recognize that picture of your—that you had in your mind?

"A I sure did.

"Q All right. And you selected a photograph of that man who fit the picture in your mind.

"A Right.

"Q All right, sir. And when you came to my office, did you still have a picture of a man in your mind?

"A Same person that I had.

"Q All right, sir. And did you again recognize anybody who fit that picture of the man you had in your mind?

"A Yes, sir.

"Q All right. When you came to the line-up in the County Jail, did you still have a picture in your mind of the man who had held you up on October 9, 1971.

"A Yes, sir.

"Q And did you see anyone in that line-up whom you recognized as being the picture in your mind.

"A True.

"Q And did you select that person?

"A I circled the—I circled the position he was standing on.

"Q I see.

"A Which means that—

"Q And when you came to Court this morning, did you still have a picture in your mind of the man who held you up on October 9, 1971?

"A Yes, sir, as far as I can recollect.

"Q All right, sir. And when I pointed to Mr. Bedford and asked you a

question, did you recognize Mr. Bedford as fitting the picture that you had in your mind?

"A True.

"Q All right, sir. Let me ask you then whether or not you have identified Mr. Bedford this morning because you recognized him as the man who held you up on October 9, 1971, or because you had seen photographs of an individual?

"A The photograph is completely different than what he is now. He don't have a beard like he did at the time, at the time of the photograph, but yet, going back, I still can't forget the eye that was looking at me.

"Q Okay. Let me ask you the question again, Mr. Carrillo, and I'll need a specific answer. Have you identified Mr. Bedford this morning in Court from your memory of the man who held you up on October 9, 1971?

"A Yes, sir.

"Q As far as you're concerned, Sherman Bedford is the same person whom you saw on October 9, 1971.

"A Yes, sir.

"Q And you have identified him this morning from that memory of the man you saw.

"A Yes, sir."

█ Implicit in the trial court's finding that Carrillo's in-court identification of appellant is admissible is the premise that such identification came from Carrillo's observation of appellant at the time of the robbery independent of and untainted by later observation of either appellant's photograph or appearance in the police line-up. Considered in context, all of the identification testimony furnishes clear and convincing proof in support of the finding of admissibility. Carrillo had sufficient opportunity to observe the robber before, during and after the robbery under ideal viewing conditions. The description of the robber given by Carrillo to the police immediately after the robbery conformed to appellant's actual description. Carrillo never identified any other person as the robber; at his first opportunity, he identified appellant from appellant's photograph and appearance in a line-up, at which appellant was assisted by counsel and to which no suggestion of illegality or impropriety is made; and Carrillo never failed to identify appellant as the robber on any occasion. In the aggregate, Carrillo's testimony is that he identified the appellant in court, by photograph and in the line-up solely from his observation and recognition of appellant at the scene of the robbery and is not, as appellant asserts, that his in-court identification was suggested by the photograph or the line-up. See Cunningham v. State, 500 S.W.2d 820 (Tex.Cr.App.1973); Dorsey v. State, 485 S.W.2d 569.

The procedure for testing the identification was proper, and the in-court identification was independent of any impermissibly suggestive source. See Martinez v. State, 437 S.W.2d 842 (Tex.Cr.App.1969). The sole ground of error is overruled.

The judgment of conviction is affirmed.

Opinion approved by the Court.