Herbert DeBLANC, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–82–009–CR.

Court of Appeals of Texas,
Beaumont.

Sept. 8, 1982.

James R. Barker, Jr., Liberty, for appellant.

Carroll Wilborn, Jr., Dist. Atty., Liberty, for appellee.

## OPINION

CLAYTON, Justice.

The jury convicted appellant of aggravated robbery and assessed his punishment at confinement for thirty years.

The primary question which we must address on this appeal is the contention that the identification procedures employed by the arresting officers violated the constitutional rights of the defendant. A brief statement of the evidence will be made so as to put the events in proper perspective.

Around 8:30 in the evening of June 27, 1980, three Mexican Nationals employed as agricultural laborers in Liberty County went to Jane's Lounge in the small town of Ames where they drank beer for a while. While inside the lounge, they were approached by two black men, and the conversation led to talk about certain types of entertainment they could have with young ladies.

The three "wet backs," as one termed himself, decided to forego such entertainment despite the fact that it was payday and each had a substantial sum of money on his person. They drove away from the lounge but were followed by another car in which appellant and his companion were riding. As the car approached the City of Liberty, appellant's vehicle driver signaled the complainants to stop, and they did near a cafe alongside the road.

In the reflected light of the cafe, appellant and one of the complainants again engaged in conversation concerning the proffered entertainment, and the complainants turned around and followed appellant's car back to the town of Ames and onto a dirt road in thick woods. There, each was robbed of his money, his shoes were taken from him, and appellant fled with the keys to complainant's vehicle.

Prior to trial, the appellant presented his motion challenging the identification procedures used, and a hearing was held with the trial judge following the procedures recommended in *Martinez v. State*, 437 S.W.2d 842, 847–848 (Tex.Cr.App.1969). See also, *Beapre v. State*, 526 S.W.2d 811, 813 (Tex. Cr.App.1975). At this hearing the witness Armando Salazar, speaking through an interpreter, testified that, while in the company of Juan Salazar and David Dominguez, he encountered two black males outside Jane's Lounge in Ames, Texas, where the two black males engaged in conversation with them.

After leaving the parking lot of the lounge and while proceeding to Dayton, he again had the opportunity to see the same two black males while stopped in the vicinity of Walker's Cafe. The area was lighted; he was "pretty close" and could see the faces of the two black males. After a conversation at this place, Armando, Juan, and David followed the same two black males to a secluded spot on a road near Ames where the same two black males, with the aid of a rifle, robbed them. He identified appellant as one of the blacks who robbed him, and was very definite in his identification. He was "sure" of his identification and that appellant was the one who "pushed him with his rifle."

The witness, Armando, then testified that he saw the appellant about three days later in the Liberty County jail. He testified that his identification of appellant was not influenced by his seeing appellant in the jail but was based upon his confrontation with him on the evening of the robbery.

David Dominguez testified he had a conversation with appellant inside Jane's Lounge for approximately thirty minutes. He testified further that he was also confronted by appellant outside the lounge and that the lighting was "pretty good," and he could see the faces of the two black males. He also saw the two men again at Walker's Cafe. He was able to see the two men at the scene of the robbery and was able to state with particularity which of the men had the knife and which had the rifle. David also stated that the voices he heard at the scene of the robbery were the same voices he heard at Jane's Lounge and Walker's Cafe. He also was able to see the faces of the two men at the scene of the robbery.

After the robbery, David, Armando, and Juan returned to a cafe in Ames where they were met by Roy Carrier of the Ames Police Department. The three victims described the two black males to Carrier. David testified that approximately one week later he saw the same two persons in a room in the Liberty County jail. He also testified that during the evening of the robbery he was in a position to see the two black men "real good" for almost an hour, and that his identification was based upon his observations of appellant and not because of seeing appellant in the jail. He remembered appellant from "when they

robbed me." He testified that six photographs of different men were presented to him by Officer Carrier and that all of the photographs were of black men with the same or similar appearance. He had no difficulty in "picking out" appellant's photograph.

Juan Salazar's testimony was similar, as to the events of the evening, to that of Armando and David. He testified that his identification of appellant as one of the men who robbed the three victims was based solely upon his observation of and confrontation by appellant on the evening of the robbery.

In overruling the motion to suppress the court's identification of appellant by the three victims, the trial court found:

"Juan Salazar, Armando Salazar, and David Dominguez had at least approximately one hour to view the parties who allegedly robbed them, 30 minutes of which [were] inside Jane's Lounge. That, notwithstanding the fact that all these Mexicans could not speak English—one of them could. David Dominguez could speak English, and that they were close enough to where they could each see this ,defendant, Herbert Thomas DeBlanc, speak. He could hear him speak, see his facial characteristics, and the identification testimony of the witnesses . . . is not tainted by the lineup at the jail.

"Further, that in-Court identification of Herbert Tom DeBlanc by the witnesses Armando Salazar, Juan Salazar, and David Dominguez are each of an independent origin or source."

■ The trial court did not specifically make a finding as to the photographic display. However, since the court conducted a hearing on the issues, and since there was evidence to support a finding of admissibility, and appellant's motion to strike the in-court identification was overruled, the court's action in overruling the motion was tantamount to a finding of admissibility as fact on such issue. *Thompson v. State,* 480 S.W.2d 624 (Tex.Cr.App.1972); *Williams v. State,* 477 S.W.2d 885 (Tex.Cr.App.1972).

■ Photographic identification does not automatically taint an in-court identification. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *White v. State,* 496 S.W.2d 642 (Tex.Cr.App. 1973); *Ward v. State,* 474 S.W.2d 471 (Tex. Cr.App.1971); *Jones v. State,* 458 S.W.2d 62 (Tex.Cr.App.1970). This same rule applies to an illegal or impermissibly suggestive lineup procedure. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Thompson v. State,* 480 S.W.2d 624 (Tex.Cr.App.1972).

■ Convictions based upon eyewitness testimony at a trial following a pre-trial identification will be set aside on that ground only if the pre-trial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See *Simmons v. United States,* supra; *Dunlap v. State,* 477 S.W.2d 605 (Tex.Cr.App.1971); *Glover v. State,* 470 S.W.2d 688 (Tex.Cr. App.1971); *Turner v. State,* 614 S.W.2d 144, 146 (Tex.Cr.App.1981).

■ In the case at bar, the trial court found that the in-court identification by the three victims is "each of an independent origin or source" and was not tainted by any pre-trial procedures. As long as the court finds that the in-court identification is based on the witness' independent recollection of the event in question, the in-court identification will be admissible notwithstanding the contention that the pre-trial procedures were unduly suggestive. *Williams v. State,* 625 S.W.2d 769 (Tex.Cr.App. 1981); *Clay v. State,* 518 S.W.2d 550 (Tex. Cr.App.1975); *Bedford v. State,* 501 S.W.2d 625 (Tex.Cr.App.1973).

At the conclusion of the hearing, the trial judge denied the motion to suppress the identification testimony, finding that each of the complainants had an adequate opportunity to "view the parties" who robbed them, one of which was in the lounge; that while only Dominguez could speak English, all were "close enough" to appellant so that they could "hear him speak, see his facial characteristics," etc., and that their identification was not tainted by the lineup at the

**804**

jail but was of an independent origin and source.

■ The three victims had ample opportunity to see and observe appellant during the evening of the robbery and at the scene of the offense. They were in his presence for a period of approximately one hour, most of which was under circumstances affording them a clear view of appellant. They did not at any time waver in their identification. The record supports the court's finding that their identifications were based upon such observations. Their identifications were based upon independent origin and source and not upon or as a result of any pre-trial procedures. In viewing the totality of the circumstances, we do not find any pre-trial procedure as being so "unnecessarily suggestive and conductive to irreparable mistaken identification" as to require a retrial of this case. See *Williams v. State,* supra; *Garcia v. State,* 563 S.W.2d 925 (Tex.Cr.App.1978).

■ Appellant also argues that his rights were prejudiced because he did not have counsel at the photographic display or the viewing through the one-way mirror. Although Officer Carrier testified that appellant was in custody at the time the witnesses observed him through the one-way mirror, no charges had been filed. We do not find merit to this complaint. *Wyatt v. State,* 566 S.W.2d 597, 600 (Tex.Cr.App. 1978). The "showup in question was investigatory and not accusatory in nature." *Garcia v. State,* 626 S.W.2d 46, 53 (Tex.Cr. App.1981).

We have given careful consideration to each of appellant's complaints and do not find reversible error in the record. The judgment of the trial court is AFFIRMED.