Lester **BOUTWELL**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 711–83 to 713–83.

Court of Criminal Appeals of Texas, En Banc.

April 24, 1985.

Rehearing Denied Sept. 24, 1986.

Dane Everton, Temple, Malcom C. Smith, Austin, for appellant.

Arthur C. Eads, Dist. Atty., and James T. Russell, Asst. Dist. Atty., Belton, Robert Huttash, State's Atty., Alfred Walker, First Ass't, Austin, for the State.

OPINION ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW

CLINTON, Judge.

A jury convicted appellant in our Cause No. 711-83 [hereafter "711"] of the offense of sexual abuse of a child and assessed his punishment at 20 years confinement. This conviction was affirmed by the court of appeals in *Boutwell v. State,* 653 S.W.2d 100 (Tex.Ct.App.—Austin 1983). Appellant was also convicted pursuant to a plea bargain of indecency with a child and assessed a seven year sentence in our Cause No. 712-83 [hereafter "712"]. This conviction was affirmed in *Boutwell v. State,* 653 S.W.2d 105 (Tex.Ct.App.—Austin, 1983). Finally, in our Cause No. 713-83 [hereafter "713"], appellant was convicted of sexual abuse of a child pursuant to a plea bargain and was assessed a 20 year sentence. This conviction was also affirmed. *Boutwell v. State,* 653 S.W.2d 108 (Tex.Ct.App.—Austin, 1983). The Court granted appellant's petitions for discretionary review in each cause.[1]

### 711

The evidence established that on January 4, 1979, 15 year old junior high student and complainant herein, M.B., ran away from school around noon with a friend, 14 year old T.M.[2] It was raining and the boys decided to go to the apartment of P.J. Lewis for shelter. Louis Herry, who was living with P.J. Lewis, washed the boys clothes for them while Lewis went out to lunch with appellant who had arrived in the interim.

When Lewis returned, he came back into the house and told the boys appellant wanted to talk to them. They agreed to go with appellant and Herry to appellant's house. All witnesses referred to appellant as "Lester" throughout the trial, and each identi-

---

1. In 711, appellant has advanced ten grounds for review. In 712, appellant raises seven grounds for review. And in 713, five grounds for review are made. The Court did not limit the grant of review to any particular grounds. Grounds which overlap will be treated only once; review of several others was improvidently granted and will be accordingly noted *post.*

2. T.M. was the complaining witness in both 712 and 713.

fied a photograph of appellant's house offered by the State.

At appellant's house, everyone but appellant had alcoholic drinks. At some point appellant asked if everyone wanted to "take some pictures."[3] Appellant took pictures of Herry and the two boys standing nude in front of a black cloth in the living room. Eventually everyone went into appellant's bedroom and more photographs were taken of appellant, Herry, M.B. and T.M. having oral intercourse with one another in various combinations.[4] At some point appellant apparently took T.M. alone into his bedroom and gave him several valiums.[5] After this photo session, appellant took Herry and the boys back to P.J. Lewis' apartment at approximately 8:00 p.m.

Out of the presence of the jury, appellant was permitted to adduce testimony of P.J. Lewis regarding the complainant, M.B.'s "prior promiscuity."[6] P.J. Lewis testified that on January 3, 1979, the day before the offense, he, M.B. and Louis Herry had oral and anal intercourse with one another at appellant's house; later, these three re-

turned to Lewis' house and "the same thing happened again."

Though the "promiscuity" defense was not available to appellant under the statute because he and the complainant were of the same sex, [see n. 6, *ante.*], it was appellant's contention both in the trial court and before the court of appeals that the nonavailability of the defense unconstitutionally discriminated against him on the basis of "sex" in violation of the Federal Equal Protection Clause and the State Equal Rights Amendment.[7] The court of appeals held it was unnecessary to resolve the constitutional question raised for the reason that the evidence offered by appellant upon the defensive issue did not establish "promiscuity."[8]

In his petition for discretionary review, appellant contends in two grounds for review that the court of appeals erred in upholding the trial court's refusal to submit the promiscuity issue to the jury as a question of fact. He first argues the court of appeals erred in the premise that "promiscuity," as a matter of law, connotes something more than engaging in several acts

---

3. The testimony regarding the chronological sequence of events from this point on conflicts.

4. Louis Herry testified he was presently incarcerated in the State penitentiary for this transaction.

5. See n. 3, *ante.*

6. The statute under which appellant was prosecuted and convicted provided in relevant part:
 "(a) A person commits an offense if, with intent to arouse or gratify the sexual desire of any person, he engages in deviate sexual intercourse with a child, not his spouse, whether the child is of the same or opposite sex; and the child is younger than 17 years.
 (b) It is a defense to prosecution under this section that the child *was of the opposite sex,* was at the time of the alleged offense 14 years or older, *and had, prior to the alleged offense, engaged promiscuously in sexual intercourse or deviate sexual intercourse.*
 * * * *"
 V.T.C.A. Penal Code, § 21.10 (1974).
 (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

7. Fourteenth Amendment to the United States Constitution; Tex. Const. Art. I, § 3a.

8. Specifically, the court of appeals stated:
 "Promiscuity connotes *a variety of consensual sexual conduct* with a variety of partners, and clearly excludes, for example, a single prior act of sexual intercourse. Searcy and Patterson, *Practice Commentary,* Tex.Pen.Code Ann. § 21.09 (1974). Moreover, we think that an element of *continuing conduct* extending over a reasonable period of time is implicit in the concept of promiscuity. A person is not promiscuous simply because he has engaged in several acts of sexual conduct within one twenty-four hour span. Our holding today is in line with the somewhat stricter standard of admissibility of evidence of previous sexual conduct that the Court of Criminal Appeals has adopted under Tex.Pen.Code Ann. § 21.13 (Supp.1982). *See* Vaught, *Rape—Admissibility of Victim's Prior Sexual Conduct: What is the Law in Texas?* 31 Baylor L.Rev. 317 (1979). Therefore, since [M.B.'s] conduct did not rise to the level of 'promiscuity,' the trial court did not err in refusing to charge the jury on the defense of prior promiscuity. *See Parent v. State* [621 S.W.2d 796 (Tex.Cr.App.1981)]. [Emphasis original.]"
 653 S.W.2d at 103.

of sexual conduct with multiple partners over a twenty four hour period, [see n. 8, *ante* ] and the concomitant that such a showing is legally insufficient to require submission of the evidence to the jury.

Appellant also argues the court of appeals' reference to V.T.C.A. Penal Code, § 21.13 (sometimes called the "rape shield law" and now incorporated into V.T.C.A. Penal Code, § 22.065) was improper for the reasons that the trial court did not have the discretion to exclude testimony under § 21.13 because that section, by its own terms, does not apply to evidence of the complainant's "promiscuity" offered by one accused of sexual abuse of a child.[9]

In these two respects, we agree with appellant.

■ Assuming *arguendo* that appellant was entitled to *employ* the promiscuity defense in his prosecution, it cannot be gainsaid that his evidence did not raise a fair *issue* of M.B.'s "promiscuity." Thus assuming M.B.'s promiscuity could be shown to be a material issue in the case, appellant would be entitled to present his evidence on that issue to the jury. The court of appeals was not called upon to determine whether the evidence offered by appellant was sufficient to *establish* prior promiscuity on the part of M.B. Moreover, we find no express, implied or independent justification for the court of appeals' conclusion that "promiscuity" requires, as a matter of law, more than a twenty four hour span of several acts of sexual conduct with a variety of partners.

■ Furthermore, we agree with appellant that the court of appeals erred in adverting to § 21.13 in the context of this

case. By its own terms, § 21.13 applies to *nonconsensual* offenses which are accomplished through some degree of force, threats or fraud. Under such circumstances, without extenuation, the victim's extraneous sexual conduct is utterly irrelevant. Thus, § 21.13 prohibits admission of such presumptively irrelevant evidence, while providing a procedure whereby the trial court may nevertheless admit it upon the accused's showing that it is probative of a material issue under the unique facts of the case, and provided its inflammatory or prejudicial nature does not outweigh its probative value.

■ In contrast, under §§ 21.09 and 21.-10, by providing the "promiscuity" defense, the Legislature has pronounced the complaining witnesses' prior extraneous sexual conduct to be relevant to a material defensive issue *by statute.* Thus, the defendant is entitled to have *any* evidence which is relevant to the issue of "promiscuity" submitted to the jury provided he has otherwise shown himself entitled to take advantage of the defense under the statute. The meaning of "promiscuity" for purposes under §§ 21.09 and 21.10 is wholly discrete from reasons for admission of prior sexual conduct under § 21.13 and little or no aid may be gleaned from the latter in analyzing the former.

■ Accordingly, the court of appeals' holding regarding the definition of and evidentiary quantum necessary to establish "promiscuity," under §§ 21.09 and 21.10, as was in effect for our purposes here, is disapproved and overruled.

■ Appellant's final argument under his first and second grounds for review is

9. At the time pertinent to the instant prosecution, § 21.13, supra, provided in pertinent part:
"(a) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct may be admitted under Sections 21.02 through 21.-05 of this code (rape, aggravated rape, sexual abuse, and aggravated sexual abuse) only if, and only to the extent that, *the judge finds that the evidence is material to a fact at issue in the case* and that its inflammatory or preju-

dicial nature does not outweigh its probative value.

\* \* \* \* \* \*

(d) This section does not limit the right of the state or the accused to impeach credibility by showing prior felony convictions *nor the right of the accused to produce evidence of promiscuous sexual conduct of a child 14 years old or older as a defense to* rape of a child, *sexual abuse of a child,* or indecency with a child."

that the § 21.10(b) promiscuity defense should be construed to permit him to take advantage of it, notwithstanding the fact that he and the complainant, M.B., are not of the opposite sex as the statute requires. Otherwise, appellant contends, the statute is unconstitutional because it arbitrarily and capriciously discriminates against him on the basis of "sex" and therefore denies him equal protection of the laws. He claims that if he had been a female and committed the very same acts of which he was accused, he would have been entitled to raise and submit the "promiscuity" defense in the instant prosecution.

But clearly, a female defendant situated similarly to appellant—that is, a female who had engaged in deviate sexual intercourse with a child 14 years or older who was of the same sex—would likewise be denied the "promiscuity" defense under § 21.10. Thus, appellant's reasoning proceeds upon a fallacy of amphiboly: his complaint is not that he is discriminated against on the basis of "sex" in the sense of "gender;" but rather, that his "sex" *act* is entitled to protection equal to that given heterosexual conduct under the law as stated in § 21.10(b).

We know of no authority which holds that homosexual conduct is a constitutionally protected activity under the Equal Protection Clause or the State Equal Rights Amendment and appellant has cited none. And in Texas, in the form of V.T.C.A. Penal Code, § 21.06, our Legislature has declared such conduct to constitute a class C misdemeanor, irrespective of the ages or promiscuity of the participants.

In sum, whatever constitutional infirmities may infect our statutory proscriptions against homosexual conduct in the form of either § 21.06, supra, or the unavailability of the "promiscuity" defense for such conduct in § 21.10(b), appellant has not effectively advanced any here. We therefore hold the court of appeals did not err in upholding the trial court's refusal to submit the "promiscuity" defense to the jury over the objection of appellant.

In grounds for review four through ten, appellant contends the court of appeals erred in upholding the trial court's admission of extraneous offense evidence over his objection.

After the State rested its case in chief, appellant presented two witnesses, each of whom testified to having seen and talked to him on the afternoon of the alleged offense in Killeen.[10] Helga Reap testified she saw appellant, whom she had known two or three years, at J.B. Novelties where she worked at approximately 3:00 p.m. on January 4, 1979. She remembered the date because appellant was looking at a bird bath and she remembered joking with him: "If this was the 4th of July rather than the 4th of January, the prices would be a lot higher."

Steve Ortega testified he had known appellant eight to ten years. On January 4, 1979, he was shooting pool at J.B. Novelties at about 6:00 p.m. He saw appellant come in and they talked for a while. Ortega testified the last time he saw appellant that day was at about 8:00 p.m.

After appellant rested, the State announced it had "quite a bit of rebuttal" but that the evidence was the subject of a motion in limine. The court excused the jury and the prosecutor announced his intention to offer "extraneous offenses to rebutt [sic] the defense theory of alibi." Asked if he understood what the State was doing, defense counsel replied:

"Yes, Sir, he's coming in with extraneous offenses—to show that the alibi isn't any good, but I don't think that—it's our position that *you can bring it in only if identity is a question and* all these—*identity is not in question. These kids all know him and know him well,* and so did the other parties. The identity portion is not the question. I don't think they can bring it in on that issue. Also—

---

**10.** The evidence established appellant's house and therefore the situs of the offense was in

Temple.

THE COURT: *Overruled.* Start your witnesses. If you want to state your objection for the record, you may finish stating it but I will allow them to bring in the extraneous offenses *now that the defensive theory has been put before the court and the jury.*"

The State called R.G., Jr. Appellant objected on the grounds that,

"identity is not in issue, nor is lascivious intent because intent is incorporated into the act, itself, * * * and I don't think there is anything unreasonable about the defense * * * and we have no idea what they are going to say or how it—"

At this point the trial judge interrupted counsel stating he would have an opportunity to examine each witness outside the jury's presence, then asked the prosecutor to show the court his case.[11]

After R.G., Jr., R.S., Jr., and P.B., all testified to incidences involving sexual contact with appellant, P.J. Lewis identified State's Exhibits 4 and 5, two photographs of adolescent boys which he testified appellant had given him. Lewis also testified that appellant had told him he had engaged in sex with each boy shown in the photos.

■■ When the prosecutor stated he had finished, the trial judge said,

"All right. I will allow them to be admitted in the presence of the jury. *The defendant needs to reiterate his objection now to each as they come in turn.*"

Pursuant to this instruction by the court,[12] appellant voiced essentially the same objection to the testimony of each witness:

"The matter is too remote; identity is not at issue; there is no improbable defense; there is no issue of lascivious intent because ... the intent is within the act itself, and the only purpose is to inflame and prejudice the jury."

■■ Characterizing these objections made in the presence of the jury as "multifarious,"[13] the court of appeals first rejected appellant's contentions because his grounds of error on appeal—that evidence of the extraneous sexual offenses "was not material or relevant to any issue in the case"—did not comport with his trial objection.

We agree with appellant that the court of appeals erred in this respect. *Buckner v. State,* 571 S.W.2d 519 (Tex.Cr.App.1978) (Opinion on appellant's motion for rehearing). Appellant's ground on appeal was merely—as it should be—a shorthand rendition of his more detailed objection voiced at trial.

The next reason stated for the court of appeals' rejection of appellant's complaints was that each witness gave substantially the same testimony without objection.

We are completely puzzled by this holding. The record reflects each of the three extraneous offense witnesses testified as to four totally different transactions.[14]

---

**11.** The prosecutor told the court, "It's Johnson versus State" but did not mention a citation. We note the only case cited in the State's appellate briefs styled *Johnson v. State* does not deal with extraneous offense law.

**12.** We cannot agree with the trial court that any additional duty devolved upon defense counsel to object to each of these witnesses' testimony in the presence of the jury in order to avoid waiver. Article 40.09, § 6(d)(3), V.A.C.C.P. To the extent that the court of appeals' opinion can be read to approve this instruction, it is overruled.

**13.** We are perplexed by the court of appeals' characterization in this regard. Since evidence may be admissible for a number of reasons, it may also be *in*admissible for a number of reasons. Trial objections, unlike appellate grounds of error, may contain as many independent supporting reasons as the objecting party believes pertinent. Though it was unnecessary to do so, see *Buckner v. State,* 571 S.W.2d 519 (Tex.Cr.App.1978) (Opinion on original submission) (Roberts, J., dissenting), defense counsel was attempting to anticipate and refute any reason he thought the State might eventually claim justified admission of what is generally inadmissible evidence.

In sum, to the extent the court of appeals' characterization of the objection as "multifarious" may intimate the objection was somehow defective or inadequate to preserve error, it is incorrect.

**14.** The prosecutor ultimately adduced before the jury the extraneous offense testimony of R.G., Jr., R.S., Jr., and P.J. Lewis apparently having decided against the testimony of P.B. Lewis testified only about State's Exhibits 4 and 5.

Moreover, even the court of appeals' opinion states "[t]he [trial] court overruled this multifarious objection three times, once as to each witness."

As to appellant's objection to admission of the photographs, State's Exhibits 4 and 5, the court of appeals held the following objection was too general to preserve error: that the photos,

"were not relevant to any issue in the case and were highly prejudicial and harmful to the appellant [and] on the same reasons we objected to the introduction of the extraneous offenses."

 We agree with appellant that the court of appeals also erred in this respect. See *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr.App.1977). Even if this objection had been inadequate, we hold appellant's objection to the photographs made at the admissibility hearing conducted outside the jury's presence, effectively preserved his complaint for review. See Article 40.-09(d)(3), supra; and n. 12, *ante*.

Finally, the court of appeals held, without elaboration, that the extraneous offenses were admissible to rebut appellant's defense of alibi, citing *Chambers v. State*, 601 S.W.2d 360 (Tex.Cr.App.1980); *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App. 1975) and *Ransom v. State*, 503 S.W.2d 810 (Tex.Cr.App.1974).

In his petition for discretionary review appellant contends, as he did at trial, the State's extraneous offense evidence was not admissible to controvert alibi because his alibi evidence did not raise any issue as to his own identity or the identity of the perpetrator of the offense. Appellant claims that a fair reading of the record in this case illustrates his alibi evidence raised an issue as to the credibility of the State's witnesses and showed that they fabricated appellant's involvement in the transaction which allegedly occurred on January 4, 1979.

The State retorts in effect that defensive testimony of alibi necessarily and in every case "places [the defendant's] identity [as the perpetrator] in issue."

The record makes it clear that at the time of trial each of the State's witnesses not only knew appellant, but knew him quite well. Each could identify photographs of appellant's home and all testified they knew "how to get there." Louis Herry testified he "know[s] the defendant in this case" and had known him for two years. Herry identified bookshelves in appellant's living room and sheets on appellant's bed depicted in photographs. T.M. called the perpetrator "Lester Boutwell" before identifying appellant. T.M. testified appellant "was good at pouting." When asked about this, he testified he had just met appellant at the time of the offense, "but I knew later [when he was pouting] because he always did." Perry Lewis testified he had known appellant for six years. M.B. called appellant "Lester" throughout his testimony.

Moreover, appellant's crossexamination of M.B., Louis Herry and T.M. reveals an effort to show each of the witnesses had faulty recollection of events. This tactic was particularly successful with T.M. and to a lesser extent successful with Herry. Recognizing this, the prosecutor once prefaced a question on redirect examination of Herry, "whether you have your times messed up or not, did it occur ...?"

Only recently the Court has cautioned against the mechanistic invocation and application of "general rules" and their "exceptions" in the admission of extraneous offense evidence in *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1984). We there reiterated the principle that the general prohibition against extraneous offense evidence must in some circumstances give way.

"For extraneous transactions constituting offenses shown to have been committed by the accused [note omitted] may become admissible upon a showing by the prosecution both that the transaction is *relevant* to a *material* issue in the case; and, the relevancy value of the evidence outweighs its inflammatory or prejudicial potential." [Emphasis original.]

*Williams,* supra, at 346; *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Cr.App.1983); *Rubio v. State,* 607 S.W.2d 498, 506 (Tex. Cr.App.1980) (Opinion concurring).

In the instant case, we are unable to conclude that the record as a whole reflects a *material* issue as to appellant's identity as the perpetrator was raised by his alibi evidence so as to justify admission of the contested evidence. It is true that in cases where the accused is a stranger to the State's witnesses, his evidence that he was elsewhere at the time of the offense will *generally* raise a material issue as to his identity as the perpetrator. E.g., *Chambers,* supra; *Ransom,* supra.

But in cases such as this where the record as a whole makes it clear that the accused is known to the State's witnesses, or that his defensive evidence is aimed at raising a theory other than "identity," it ignores the rationale well stated in *Williams,* supra, "automatically" to admit highly prejudicial evidence as relevant to an issue which, when subjected to analysis, is simply not in the case. See *Messenger v. State,* 638 S.W.2d 883 (Tex.Cr.App.1982) (Opinion on original submission); and *Franklin v. State,* 488 S.W.2d 826 (Tex.Cr. App.1972). "Each case must be considered on its own facts...." *Franklin,* supra, at 829. The danger of rote application of general rules is that they focus on "admissibility" rather than the logical analysis all evidence must withstand to determine admissibility. To the extent that it suggests the defense of alibi invariably and necessarily creates a material issue as to "identity" so as to dispense with further analysis as to the admissibility of extraneous offense evidence, *Cameron,* supra, is overruled.

Neither were the extraneous offense testimony and State's Exhibits 4 and 5 admissible to directly rebut appellant's alibi evidence. Since none of the events described in the State's evidence occurred on the day of the instant offense, none of it tended to show appellant was not in Killeen where his witnesses said he was. *Messenger,* supra.

We accordingly hold the court of appeals erred in finding the extraneous offense evidence was admissible to rebut appellant's defensive testimony. Further, since the contested evidence had no probative value upon a material issue in the case, the effect of its admission was to bombard the jury with evidence that appellant is a "child abuser in general." This therefore presents a classic example of the kind of evidence which hopelessly distracts the jury from the issues they are called upon to resolve and adulterates the deliberative process. We surely cannot say it made no contribution to the jury's assessment of appellant's twenty year sentence.

The judgment of the court of appeals in our Cause No. 711–83 is reversed.

## 712

By his first ground for review, appellant complains of the unavailability of the promiscuity defense to him in this prosecution. For the reasons stated in our disposition of the same contention in 711, this ground is without merit.

In his second ground for review, appellant contends his guilty plea was not knowingly entered in that the plea was made upon the representation that his trial counsel would preserve and have reviewed on the merits the preceding contention.

Our treatment of appellant's first ground for review reflects our plenary consideration of the merits of that contention; assuming (without deciding) the plea was so conditioned, that condition has been in all things met.

Having fully considered the remaining grounds for review in 712, we conclude the appellant's petition for discretionary review in these regards was improvidently granted. See Rule 302(c) Rules of Post Trial and Appellate Procedure in Criminal Cases.

The judgment of the court of appeals in this cause is accordingly affirmed.

## 713

In his petition for discretionary review in this cause, appellant raises five grounds

for review which are identical to contentions raised in 712. For the reasons stated in our treatment of grounds one and two in 712, we overrule grounds for review one, two and five herein. We further hold review was improvidently granted on the remaining grounds advanced. Rule 302(c), supra.

The judgments of the court of appeals in our Cause Nos. 712–83 and 713–83 are affirmed.

The judgment of the court of appeals in our Cause No. 711 is reversed.

TEAGUE, J., concurs in result.

In Cause No. 711–83, McCORMICK, J., concurs in result and TOM G. DAVIS and W.C. DAVIS, JJ., dissent.

## OPINION ON STATE'S MOTION FOR REHEARING

### W.C. DAVIS, Judge.

In our opinion on original submission we held that the evidence showed that the identity of appellant as the perpetrator of the offense was not in issue and that his defense of alibi did not "automatically" put identity in issue so as to permit the introduction of extraneous offenses. We reaffirm the correctness of our original opinion delivered April 24, 1985, and need not reanalyze the issue here.

In his motion for rehearing the district attorney for Bell County reiterates a contention raised in the Court of Appeals and in this Court on original submission, but which we did not then address. We will do so now.

Appellant's grounds of error pertaining to the admission of extraneous offenses were raised for the first time in a supplemental brief filed in the Court of Appeals on March 16, 1983, about three years after the original brief was filed in the trial court. The Court of Appeals granted appellant leave to file the supplemental brief and addressed the contentions raised therein. The State contended in the Court of Appeals and in this Court, both on original submission and on rehearing, that under

*Coleman v. State,* 632 S.W.2d 616 (Tex.Cr. App.1982) appellant's contentions are not properly before any court for consideration. *Coleman* stated that a supplemental brief raising a new ground of error not raised in the original brief, is not properly before the Court for review.

We agree that under *Coleman,* supra, appellant's contentions were not properly before the Court of Appeals and thus are not properly before this court. However, because of the constitutional implications we will treat these grounds as unassigned error, see *Worton v. State,* 492 S.W.2d 519 (Tex.Cr.App.1973), and address the merits of the contentions. Fundamental unfairness and considerations of due process involved in this particular case require our attention. See *Perry v. State,* 703 S.W.2d 668 (Tex.Cr.App.1986); *Carter v. State,* 656 S.W.2d 468 (Tex.Cr.App.1983). Because the nature of the offense charged and the extraneous acts admitted were such that the prejudice to the defendant outweighs any probative value, we will address the contentions raised in this case. See *Ballard v. State,* 464 S.W.2d 861, n. 1 (Tex.Cr.App.1971). Where the improper use of such extraneous acts in the context of the instant case might well have influenced the outcome and affected the fundamental fairness of the trial in this particular case, we feel compelled to address the issue. *Ballard,* supra; *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); *Dorsey v. State,* 485 S.W.2d 569 (Tex.Cr.App.1972).

In its motions for rehearing, the State asserts that even if the extraneous offenses are not admissible to show identity, they are admissible in cases like the instant one involving the sexual abuse of a child because appellant's alibi defense put in issue whether any offense occurred at all. Thus, the State argues, evidence of the commission of other recent similar offenses involving children is admissible (1) to show the probability the act occurred; (2) to show appellant's unnatural attitude toward the victim and witnesses; and (3) to show that the offense was part of a continuing

scheme and design on the part of appellant. The State argues, in essence, that cases involving sexual offenses, like sodomy or sexual abuse of a child, are governed by different rules of admissibility for extraneous offenses than are other offenses. The State relies on "firmly established" rules fashioned many years ago. An examination of cases discussing the admission of extraneous offenses in these types of cases is necessary to explain the rationale for and development of rules governing the admissibility of extraneous offenses in sex cases.

The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1983) and cases cited therein. Therefore, an extraneous offense is not admissible unless "... the transaction is *relevant* to a *material* issue in the case; and, the relevancy value of the evidence outweighs its inflammatory or prejudicial potential." (emphasis in original). *Williams*, supra, at 346.

As we noted on original submission, rote application of general rules and "automatic" exceptions previously invoked by this Court for admission of extraneous transactions should be avoided. Rather, analysis must be done in every case in which admission of an extraneous offense is sought. The list of "exceptions" to the "general rule" of inadmissibility of extraneous transactions contained in *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972) is exemplary rather than exhaustive. *Williams*, supra; *Morgan v. State*, 692 S.W.2d 877 (Tex.Cr.App.1985). *Every* case must be examined on it own facts, strengths, and weaknesses to determine whether the extraneous transaction is relevant to a material issue, and whether the relevancy value outweighs the prejudicial potential. For example, in a case where the State's *need* to prove intent is strong because of an otherwise innocent act, extraneous acts are more likely to be more probative than prejudicial. See *Morgan*, supra. On the other hand, where the circumstances surrounding the offenses are "abundantly supportive of the inference of intent," the necessi-

ty for extraneous offenses to prove intent is minimal and the prejudice arising from their admission, comparatively great. See *Prior v. State*, 647 S.W.2d 956 (Tex.Cr. App.1983).

I.

We are concerned here with one "exception" established many years ago that has become, over time, distorted and misapplied. Texas, like many other states, recognized a very narrow "exception" to the "general rule" of nonadmissibility of extraneous offenses. The Court permitted a sort of "res gestae" exception for cases involving sexual offenses.

In *Battles v. State*, 63 Tex.Cr.R. 147, 140 S.W. 783 (1911), this Court reviewed and resolved several lines of conflicting decisions involving admission of extraneous acts of intercourse between the defendant and the victim in rape cases of children under the age of consent. In a very thorough and extensive opinion examining other jurisdictions as well as Texas, the Court held that prior acts of intercourse *between the defendant and the complainant* were admissible, just as they were in prosecutions for adultery and fornication, to show the circumstances and relationship of the parties so as to place the charged act of intercourse in the context of the long-continuing relationship that existed. The court held:

> that all acts and conduct that can be considered and were intended as an inducement to render the accomplishment of his [defendant's] purpose possible [are] admissible in evidence and where the facts show that a father or person standing in loco parentis, or who, by any tie would cause a child to look to him for guidance, or person who stands in such relation that the child would be susceptible to his wiles, and such person or persons shall, after the acts of inducement, have sexual intercourse with such child at available opportunities, all such acts of intercourse are admissible ...

140 S.W. at 797.

The crux of the rationale for admitting other acts was essentially to show circum-

stances that threw light upon the charged act of intercourse and explained the act in question by showing the relation and mutual disposition of the parties, much like "res gestae" or context of the offense notion.

If the facts show long-continued association, acts and conduct evidently intended to accomplish sexual intercourse, and after obtaining the love and affection and control of the will of a child under 15 years of age, frequent acts of intercourse take place, and each act of intercourse is but a step in the continued transaction, each and every act of intercourse is admissible.... In the offenses of burglary and theft, if the person charged with an offense by certain means and methods commits a number of acts of theft from the same person within a reasonable time of each other, and enters a house by certain modes and means, a person acting with such person is permitted to detail the transactions as a whole, some courts saying it shows system and method, but in reality it is but one continuous transaction, carried on in accordance with a preconceived plan.

140 S.W. at 788.

Even if we view *Battles,* supra, as establishing an exception, in sex cases, to the general rule barring admission of extraneous offenses, it is a very narrow exception permitting the admission of acts which occurred between the minor complainant and the defendant so as to explain the charged act and view such an unnatural act in light of the relationship of the parties as well as to make a child's accusation more plausible. A jury would otherwise hear essentially an incomplete version of the charged offense, as though it had occurred in a vacuum as a one-time act. Such evidence from a child, standing alone, might be considered implausible or incredible. The narrow exception sought to alleviate some of that problem.

We note that a prerequisite rule also applied and extraneous acts could not be admitted before they were at issue, such as where a defendant denied such relationship or where cross-examination was of such character as to make the other acts admissible. *Wingo v. State,* 89 Tex.Cr.R. 162, 229 S.W. 858 (1921); *Cottrell v. State,* 91 Tex.Cr.R. 131, 237 S.W. 928 (1922); *Laredo v. State,* 155 Tex.Cr.R. 183, 232 S.W.2d 852 (1950); *Gephart v. State,* 157 Tex.Cr.R. 414, 249 S.W.2d 612 (Tex.Cr.App.1952). This prerequisite for admission of extraneous acts is actually part of the present day "test". As we noted in *Morgan,* supra, at 880, n. 3:

The requirement that the material issue be contested as a prerequisite to admission of extraneous acts in proof thereof ... is no more than a rule of thumb for insuring that an extraneous act is genuinely needed to shore up the State's case. It is really, therefore, an aspect of the "more probative than prejudicial" analysis, since, ... the greater the State's need to resort to extraneous offenses to prove up some material issue in the case, the higher will be the probative value of that offense in relation to its potential for prejudice.

The Court still barred evidence of extraneous acts between a third party and the defendant unless admitted to prove a relevant contested issue such as intent, identity, motive, or to rebut a defensive theory. *Bielecki v. State,* 140 Tex.Cr.R. 355, 145 S.W.2d 189 (1940).

In 1951, *Johns v. State,* 155 Tex.Cr.R. 503, 236 S.W.2d 820 (Tex.Cr.App.1951), although apparently unaware of the extensive opinion in *Battles,* supra, reiterated the principles stated in *Battles.*

[I]n trials of an accused for rape under the age of consent and if material in determining the truth or falsity of the accusations, there can be taken into consideration the associations between the parties and their evident regard each for the other as evidencing the probability of the charged act and unnaturalness of the accused's attitude toward the victim of his lust, even in the presence of other acts of like character to the one on which the prosecution is based.

236 S.W.2d at 832.

The court further explained:

In matters of incest or rape under the age of consent, it is often of importance to show the attitude between them and the relative size, age and strength of the parties, and if possible, to show how one in a position demanding care and guidance of a related person, has failed to such duty and has adopted an unnatural attitude relative thereto, and by fondling or otherwise, evidences a desire for sexual gratification toward such child or relative. We therefore think that where any such acts become material to thus show them they are admissible.

236 S.W.2d at 823.

*Johns,* supra, is really no different than *Battles,* supra, in permitting the admission of evidence of acts between the minor complainant and the defendant to explain the circumstances of the charged act by placing it in its proper context of the relationship between the parties and thus explaining the charged act "which would not otherwise appear plausible." *Gephart,* 249 S.W.2d at 620. Such evidence tends to make the complainant's allegation more credible and more probable. Thus, the extraneous acts are more probative than prejudicial in this context. See also *Brown v. State,* 657 S.W.2d 117 (Tex.Cr.App.1983).

Subsequent cases, although correct in admitting extraneous acts occurring between the defendant and the complainant, extracted the language in *Johns,* supra, and stated the rationale for admission simply as "evidencing the probability of the charged act and the unnaturalness of the accused's attitude toward the victim of his lust ..." The accompanying explanation and rationale for probative value as to the associations of the parties has been left out. See *Gephart,* supra; *Lozano v. State,* 159 Tex. Cr.R. 613, 266 S.W.2d 147 (Tex.Cr.App. 1954); *Head v. State,* 160 Tex.Cr.R. 42, 267 S.W.2d 419 (Tex.Cr.App.1954); *Earwood v. State,* 161 Tex.Cr.R. 171, 275 S.W.2d 652 (Tex.Cr.App.1955); *Happner v. State,* 168 Tex.Cr.R. 260, 325 S.W.2d 390 (Tex.Cr.App. 1959); *Smith v. State,* 170 Tex.Cr.R. 518, 342 S.W.2d 445 (Tex.Cr.App.1961); *Hensley v. State,* 388 S.W.2d 424 (Tex.Cr.App.1965);

*Smith v. State,* 409 S.W.2d 409 (Tex.Cr. App.1966); *James v. State,* 418 S.W.2d 513 (Tex.Cr.App.1967); *Williams v. State,* 490 S.W.2d 604 (Tex.Cr.App.1973). These decisions have apparently lost sight of the fact that the exception, stated in this fashion, is *directly contrary* to the general rule excluding propensity evidence to show a defendant's criminal character. Regardless of the simplification, Texas openly acknowledged a limited acceptance of propensity evidence in sexual offenses involving a minor complainant and the defendant.

However, extraneous sexual offenses involving the defendant and third parties were *still* not admissible under this rationale. *Young v. State,* 159 Tex.Cr.R. 164, 261 S.W.2d 836 (Tex.Cr.App.1953); *Bielecki,* supra. This is not to say such extraneous offenses are always inadmissible. If they are relevant to a material issue in the case, and the relevancy value outweighs its prejudicial potential, they are admissible. *Williams,* supra, at 346.

II.

The exception permitting admission of other acts committed between the complainant and the defendant was routinely followed until 1967 when *Johnston v. State,* 418 S.W.2d 522 (Tex.Cr.App.1967) appeared. This deviation was then relied upon in *McDonald v. State,* 513 S.W.2d 44 (Tex.Cr.App.1974). Although the two cases are somewhat confusing upon exactly what basis they are decided, it appears that the narrow exception forged in *Battles,* supra, and *Johns,* supra, has been expanded to permit the admission of extraneous sexual offenses between the defendant and a *third party* not involved or connected to the offense charged. Indeed, the State in the instant case argued such contention. Both *McDonald,* supra, and *Johnston,* supra, seem to indicate that in a sodomy case involving a minor where a defendant presents a defense of alibi, but where identity is not in issue, extraneous sexual offenses involving a defendant and a third party are admissible to show "the probability of the act charged and the unnatural

attention" of the defendant toward the complainant. Prior to *Johnston,* supra, and *McDonald,* supra, extraneous sexual offenses admitted to show "probability of the act charged and unnatural attention", were only permitted when they involved the minor complainant and the defendant.

The State contends that under *Johnston,* supra, and *McDonald,* supra, once a defendant offers an alibi defense, similar extraneous sexual offenses involving third parties are material and thus admissible to show "the probability the act occurred and the defendant's unnatural attention" toward children. The "probability" and "unnatural attention" rationale simply does not rebut alibi. Instead, it allows admission on a propensity theory, i.e., once a sex offender, always a sex offender. To permit extraneous acts to be admitted when a alibi defense is presented which does not involve an issue of identity, logically means such acts could be admissible when a defendant simply denies the offense, since alibi is nothing more than a particularized denial of guilt. P. Robinson, Criminal Law Defenses, § 69 (1984). Therefore, consistent with the State's argument, extraneous offenses would always be admissible if a defendant denied committing the act charged. No defendant could offer any defensive theory without "automatic" introduction of extraneous sexual offenses, whether between the complainant and defendant or between the defendant and an unrelated third party. The prejudice would be overwhelming and the obliteration of the protection inherent in the exclusionary rule for extraneous offenses would be complete.

While we have recognized a narrow exception for cases involving a minor complainant and the defendant, we refuse to expand that exception to permit exactly what the exclusionary rule for extraneous offenses forbids—propensity evidence, especially when, unlike *Battles,* supra, and *Johns,* supra, such evidence does not show a relationship or mutual disposition between the complainant and the defendant. At least under *Battles,* supra, and *Johns,* supra, the extraneous acts helped to "set the scene" and paint a complete picture of the relationship between the complainant and defendant much more pertinent to the offense charged than acts would be between the defendant and a third party. The danger is too great that juries would convict on character evidence of this type and that because a defendant had committed similar acts before and was thus an "established sodomite", as the State contends, he should be convicted of the instant charge. In sex cases, this prejudice is even more pronounced. Notes, Evidence—Criminal Law—Prior Sexual Offenses Against a Person Other Than the Prosecutrix, 46 Tulane L.Rev. 336 (1971). The narrow exception arose for two reasons: First, in response to a defendant's denial of the offense or undermining of the complainant; and, second, on a premise of supporting a minor complainant's credibility and plausibility, and showing a preexisting relationship. Such an unwarranted expansion as the State proposes cannot be permitted if we are to conduct fair trials on such inherently prejudicial and emotional offenses.

## III.

Various commentators have explained the admission of extraneous acts between a defendant and a complainant, an apparent violation of the general rule of nonadmissibility for extraneous offenses, by the nature of the offense. Gregg, Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses, 6 Ariz.L.Rev. 212 (1965); Comment, Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses, 25 UCLA L.Rev. 261 (1977); E. Imwinkelried, Uncharged Misconduct Evidence § 4:14 (1984). Sexual offenses are highly emotional issues in our society and the defendants are regarded differently from the "ordinary" criminal. Gregg, supra, points out that the narrow exception evolved from prosecutions of consensual sexual crimes like adultery and fornication, to sexual offenses involving children under the age of consent. See also *Battles,* supra. A successful conviction often depend-

ed primarily on whether a jury believed the complainant, turning the trial into a swearing match between the complainant and the defendant. Admission of other acts committed by the defendant against the complainant "corroborated" and made more plausible the complainant's testimony.[1] *Gephart*, supra; Gregg, supra, at 219. See *Smith v. State*, 409 S.W.2d 409 (Tex.Cr. App.1966). These extraneous acts also evidenced the probability that the defendant had indeed committed the offense for which he was charged and showed the lustful disposition or unnatural attitude of the defendant toward the victim, both of which are actually propensity evidence, something usually barred from admission.. See Gregg, supra, at 219; E. Imwinkelried, supra, § 4:15 at 35; and Notes, supra, at 341. In sum, extraneous offenses were admitted basically for two reasons: (1) a need to enhance the credibility and plausibility of the complainant's testimony and accusation, sometimes called corroboration; and (2) evidence of extraneous acts made it more probable the defendant was guilty of the charged act. This was regarded as particularly necessary in sexual offenses where the crimes were often committed in secret. See, Gregg, supra, and Comment, supra. Texas' "probability" or lustful disposition rationale originated as part of "res gestae" or context notion. In Texas, an additional requirement was that the defendant must first deny the act or undermine or impeach the complainant in some way before extraneous acts are admissible. *Gephart*, supra; *Laredo*, supra.

The lustful disposition idea was premised on the belief that sex offenders are more likely to repeat their crimes than are other criminals. Notes, supra, at 342. Recent studies call this premise into question and show that sex offenders rate as one of the lowest recidivists among criminals. Notes, supra, and articles cited therein at 342.

The propensity rationale for the special exception admitting extraneous sexual acts is of dubious validity.

Nevertheless, although criticized by many commentators and abolished by some courts, we continue to recognize a narrow exception for sex offenses to permit admission of similar extraneous sex offenses which occurred *between the minor complainant and the accused.* Cf. *Morgan*, 692 S.W.2d at 882, nn. 3, 7; *Prior v. State*, 647 S.W.2d 956 (Tex.Cr.App.1983); *Laredo*, supra; see E. Imwinkelried, supra; Notes, supra. Arguably, because extraneous sex acts between the complainant and the defendant are not admissible until the defendant denies the act or undermines the credibility of the complainant in some fashion, this narrow "exception" simply follows the admissibility analysis of *Williams*, 662 S.W.2d 344. The extraneous acts are relevant and probative under the "res gestae" or context rationale from which they arose. When the defendant denies the act or relationship or undermines the State's case, then there is need for such evidence to shore up some part of the State's case, and the prejudice is not greater than that need, i.e., the extraneous acts between the complainant and the defendant are usually more probative than prejudicial.

Therefore, we continue to recognize a limited "exception" for admission of extraneous sexual transactions between a defendant and the complainant. See, *Brown*, supra. Ideally, as discussed, such evidence will be admissible under a *Williams*, supra, analysis where the extraneous transaction is relevant to a material issue. But, we also recognize the validity of the "res gestae" or context exception established in *Battles*, supra, and *Johns*, supra. Particularly in cases involving minors, such evidence can aid the jury in properly evaluating the "inherently questionable testimony of a minor against an adult responsible for

---

**1.** "Corroboration" was sometimes mistakenly used to refer to the complainant's own testimony about extraneous acts between the defendant and herself. In those instances the "corroboration" was actually admitted to support the credibility of the complainant and was not corroboration. However, third parties also testified to circumstances or acts they saw between the defendant and the complainant. In these instances the testimony was corroborating the complainant.

his welfare" or in a position of authority and control over the minor. See *Veloz v. State*, 666 S.W.2d 581 (Tex.App.—Houston [1st Dist.] 1984). This type of rationale is similar to that permitting admission of certain "background" evidence in murder and voluntary manslaughter cases. See V.T. C.A. Penal Code, § 19.06. While permitting admission of evidence of acts between the defendant and the complainant, rather than including third parties, may be a difference of degree rather than kind, E. Imwinkelried, supra, § 4:15 at 36., the degree of prejudice is an important difference in balancing admission and exclusion. *Williams v. State*, 662 S.W.2d 344 (Tex.Cr. App.1984).[2]

We reiterate that the "probability" and "unnatural attention" language as justification for admitting extraneous sexual acts between a defendant and a third party is inappropriate and incorrect. The limited exception applies only to extraneous sexual acts between the defendant and the complainant. And, even as to these acts, as explained, the "probability" and "unnatural attention" language, by itself, is not justification or rationale for admission. That language must be used as it originated as part of the res gestae and context rationale espoused in *Battles*, supra, and *Johns*, supra. Therefore, to the extent that *McDonald*, supra, and *Johnston*, supra, admitted extraneous acts between the defendant and a third party on a "probability" and "unnatural attention" exception, they are overruled. However, *McDonald*, supra, and *Johnston*, supra, also properly admitted extraneous offenses on other proper grounds such as rebuttal of an impression that the defendant was a churchgoing, hardworking man, and therefore unlikely to commit the charged offense; and rebuttal that the defendant was being framed by the witnesses. Thus, the same extraneous acts, though inadmissible as propensity evidence, may be admissible under a proper analysis and a proper rationale. Extraneous sex offenses were and are still admissible if they fall into one of the proper "exceptions" to the "general rule" barring their admission. See and cf. *Ball v. State*, 163 Tex.Cr.R. 214, 289 S.W.2d 926 (Tex.Cr.App.1956) (correct as to intent); *Rangel v. State*, 171 Tex.Cr.R. 620, 352 S.W.2d 275 (Tex.Cr.App.1961) (intent); *Blum v. State*, 417 S.W.2d 66 (Tex.Cr.App. 1967) (intent); *Asay v. State*, 456 S.W.2d 903 (Tex.Cr.App.1970) (rebut intoxication); *Ballard v. State*, 464 S.W.2d 861 (Tex.Cr. App.1971) (rebut defendant's assertion that he did not "mess around with little children"); *Williams v. State*, 481 S.W.2d 815 (Tex.Cr.App.1972) (rebut alibi by showing car was not where defendant said it was at the time); *Williams v. State*, 502 S.W.2d 135 (Tex.Cr.App.1973) (intent).

### IV.

In the instant case, the State's witnesses were impeached and their testimony

2. In a balancing test the extraneous acts involving the complainant and the defendant are arguably less prejudicial than other extraneous acts because,

[t]he prosecutrix and her relations with the defendant will be the central issue of the trial. If other similar offense are offered in evidence there may still be the disadvantage of surprise for the defendant, especially if the evidence is fabricated. Nevertheless, the surprise problem should be somewhat mitigated since the defendant knows that any other offense introduced in evidence will have to involve both himself and prosecutrix, and he can at least be prepared to meet evidence which attempts to connect him with her. Similarly, since any other offense offered to be proven would involve the same two parties, confusion of the issues for the jury should not be as great as in a case where the defendant's connection with other women also comes into issue. Finally, where the evidence of the offense is only the testimony of the prosecutrix that other offenses occurred (and this is frequently the case), we have only the charge of several offenses by one person. If a jury does not believe the prosecutrix in respect to the crime charged, it may not be greatly swayed by her further testimony of other offenses. This is in great contrast to the case in which other witnesses testify to other offenses by the defendant. Where there are several independent witnesses testifying to other offenses, there will be a much greater impact on the jury and a much stronger tendency to believe that the defendant committed the act charged.
Gregg, supra, at 220.

and credibility undermined by cross examination and by appellant's strong defense. However, the extraneous acts between appellant and other males does not help prove appellant committed the charged offenses except under a propensity rationale, for which they are not admissible. The "res gestae" rationale of *Battles,* supra, and *Johns,* supra, is inapplicable; intent is not a contested issue in the instant case where the act itself is indicative of such; cf. *Morgan,* supra; identity, as discussed in our original opinion is not an issue; nor do the acts between third parties and appellant rebut appellant's alibi. It does not make sense to claim, as the State urges, that extraneous offenses involving third parties "rebut" the defense of alibi. Even if we agreed with the State that they were admissible to show "probability and unnatural attention," this is not the same thing as rebuttal. Rebuttal of a defense means evidence is introduced contradicting some aspect(s) of the defense itself, i.e., a defendant claims he was in his car in a place other than where the offense occurred; evidence that an unidentified man, driving appellant's car at the time he said he was elsewhere in his car, exposed himself is admissible to rebut his alibi. *Williams v. State,* 481 S.W.2d 815 (Tex.Cr.App.1972). A defendant claims he was intoxicated at the time of the offense; evidence rebutting his claim of intoxication is admissible. *Asay v. State,* 456 S.W.2d 903 (Tex.Cr.App. 1970); cf. *Messenger v. State,* 638 S.W.2d 883 (Tex.Cr.App.1982). Extraneous offenses unrelated to the specifics or to any aspect of the alibi defense are not admissible under a theory they rebut that alibi defense.

▆ Thus, we are left with the State's last argument for admission—the extraneous offenses show that the charged offense was part of a continuing scheme and plan by appellant.

The "common plan" exception has been often employed as a "subterfuge for the admission of propensity-type evidence." Comments, supra, at 280. We are not here concerned with the *modus operandi* or

"signature" exception used to prove identity. A series of similar acts are not enough to show a common plan or design.

> But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing intent. . . . [T]he effort is to establish a definite prior design or system which included the doing of the act charged as part of its consummation. . . .
>
> The added element, then, must be, not merely similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individual manifestations.

2 J. Wigmore, Evidence, § 304 at 249 (Chadbourn Rev.1979). See also R. Ray, Texas Law of Evidence, § 1521 at 208 (Texas Practice 3rd ed. 1980). In sex cases where one victim is the object of repeated assaults it might be said to show one continuous transaction or system. *Battles,* 140 S.W. at 788. Strictly speaking, such reasoning is incorrect. The standard exception for plan, scheme or design allows other offenses to be shown which are "integral elements of a scheme or plan ultimately directed toward an end that is the same as the one toward which the offense charged is directed." Gregg, supra, at 227. Wigmore presents an example in which the accused is charged with assault with intent to rape. Where intent alone is disputed, a prior assault on the same woman the day before might have probative value. But, if the assault itself is disputed and the defense is alibi, the prior assault is of little value. 2 J. Wigmore, supra, § 304 at 249.

In upholding the admission of extraneous sexual offenses, several Texas cases have simply included common design or plan in the list of reasons for admission, without any discussion. *Johnston,* supra, *McDonald,* supra; *O'Neal v. State,* 421 S.W.2d 391 (Tex.Cr.App.1967); *Kester v. State,* 636 S.W.2d 232 (Tex.App.—El Paso 1982). These cases typify the "subterfuge" for admission of propensity-type evi-

dence. A "true" common plan or scheme exception is shown by *Haley v. State*, 87 Tex.Cr.R. 519, 223 S.W. 202 (1920). The defendant was charged with murder of the husband of his former sweetheart. Evidence that he had poisoned his wife was admissible as a "necessary step(s) or points in the completion of a formed design."

Central to the common plan or scheme exception is that there be a plan or scheme and the extraneous offenses are steps taken toward the accomplishment of the plan. In the instant case there is general similarity of the offenses, i.e., appellant invited young males to his house, gave them drinks and drugs and committed various sexual acts with them. No plan or preconceived scheme was shown.

In reality, the courts are permitting the proponent to introduce propensity evidence in violation of the prohibition in the first sentence of Rule 404(b). Proof of a number of similar burglaries or drug transactions may be probative of the defendant's status as a professional criminal. However, if the similarities are insufficient to establish modus [for identity] and there is no inference of a true plan in the defendant's mind, the proponent is offering the evidence on a forbidden theory of logical relevance. It is immaterial that there are many instances of similar acts by the defendant; the number of acts increases the acts' probative value on the issue of the defendant's propensity, but standing alone the number of acts cannot change the propensity quality of the theory of relevance. The courts are illicitly allowing the proponent

to prove the defendant's character, disposition, or propensity.

E. Imwinkelried, supra, § 3:23 at 61–62.

In the instant case there is no evidence of a plan such that the extraneous offenses could be viewed as steps taken toward the accomplishment of a plan. A showing of appellant's commission of other similar offenses, without more, does not show a common plan so that the various acts are "to be explained as caused by a general plan of which they are individual manifestations." 2 J. Wigmore, supra, at 249.

In conclusion, we find the extraneous offenses are inadmissible because they do not meet the test—the transaction must be relevant to a material issue in the case; and the relevancy value of the evidence must outweigh its inflammatory or prejudicial potential. *Williams*, 662 S.W.2d at 346. The State's motion for rehearing is denied.

CAMPBELL, J., concurs in the result.

ONION, P.J., and TOM G. DAVIS, McCORMICK, and WHITE, JJ., dissent.

CLINTON, Judge, concurring.

Whether *Coleman v. State*, 632 S.W.2d 616 (Tex.Cr.App.1982), was correct in concluding that a ground of error contained in a "supplemental brief" was not properly before the Court for review is a moot question.[1] By citing former Article 40.09, V.A.C.C.P., and *Kalmbach v. State*, 481 S.W.2d 151 (Tex.Cr.App.1972), the Court indicates that its decision is derived from former appellate procedure prescribed in §§ 9, 10, 11, 12 and 13, before that "noble experiment" was terminated September 1, 1981, by Acts 1981, 67th Leg. Ch. 291, p. 804, § 108, S.B. 265.[2] Whatever the rule, with

1. The supplemental transcript referred to by the *Coleman* panel in addressing his first ground of error was prepared after defendant filed his original brief in the trial court; upon motion of the State and over objections of defendant the trial judge ordered the record supplemented with material adverse to defendant's contentions. Another ground of error attacked for vagueness the constitutionality of the misdemeanor deferred adjudication scheme; with leave of court first obtained defendant filed a thin "amended brief" broadening his challenge to the statute; the State responded with a de-

fense on the merits. Thereafter, the judge of the trial court entered an order of transmittal of the entire record and briefs, reciting therein that they had been considered and that a new trial should not be granted. The entire record was received by the Clerk of the Court August 18, 1981.

2. In *Coleman*, defendant and the State filed their appellate briefs and amended briefs in the trial court, as then required by Article 40.09, § 9; without hearing oral argument, the judge of the trial court had the duty to decide from

demise of that procedure the reason for the rule, and thus the rule itself, no longer exists.

In granting trial courts a "role in the appellate process," *Reed v. State*, 516 S.W.2d 680, 682 (Tex.Cr.App.1975), the ideas at work were that by allowing the trial judge "full opportunity to examine the completed record, hear arguments and study briefs and grant a new trial to the same extent as would the appellate court," "in many cases he would recognize the fact that reversible error was in the case and ... would promptly grant a new trial ...," thereby reducing the number of appeals to this Court and, not so coincidentally, "protecting his appellate record of which so many able trial judges are justifiably proud." Interpretative Commentary and Special Commentary to Article 40.09. To be noted is that authority to extend time to file briefs reposed in the trial court. *Williams v. State*, 413 S.W.2d 707, 708 (Tex.Cr.App.1967)—until Acts 1977, 65th Leg. Ch. 236, p. 638, when this Court took on that chore.

Once the appellate authority of a trial court was invoked by timely notice of appeal and briefs were considered along with oral argument, if any, its granting a new trial was not subject to review by this Court. *Reed v. State*, supra. On the other hand, should the trial court refuse to grant a new trial, it became the "duty" of this Court to review "all grounds of error and arguments in support thereof urged in de-fendant's brief in the trial court," Article 40.04 § 13; *Keel v. State*, 434 S.W.2d 687, 690 (Tex.Cr.App.1968) (Motion for Rehearing). Obversely, there was no "duty" to review grounds of error raised for the first time in the Court; indeed, for the Court to do so would sanction bypassing original appellate jurisdiction in the trial court.[3]

Thus, unless unassigned error reviewed in the interest of justice, our appellate power and authority was restricted to consideration of grounds of error raised and arguments made by appellant and reply by the State in their briefs filed in the trial court. *Reed v. State*, supra. While Article 44.33, V.A.C.C.P., allowed the parties to file in this Court "such supplemental briefs as they may desire before the case is heard on oral argument," that contemplated little more than a discussion of more recent decisions and theories pertaining to grounds of error previously considered by the trial court.

Accordingly, efforts by appellants to compensate for failure to comply with Article 40.04, § 9, such as tendering to the Clerk of this Court a brief styled "amended" or "supplementary," were also rebuffed. For example, relying on *Johnson v. State*, 478 S.W.2d 442 (Tex.Cr.App.1972), and others to the same effect, the *Kalmbach* court correctly held that grounds of error in a pro se supplemental brief filed directly in this Court, not raised in a brief presented in the trial court, were not properly before the Court for review.[4]

those briefs whether to grant a new trial. *Id.*, § 12. Upon refusal of new trial, the clerk transmitted record and briefs to the Court for review of "all grounds of error and arguments in support thereof urged in defendant's brief ..., as well as unassigned error ... in the interest of justice." For our treatment on rehearing of the ground of error contained in the amended brief, see *Coleman v. State*, 640 S.W.2d 889, 892–893 (Tex.Cr.App.1982).

3. Early on, the Court was content to indicate that compliance with the statute by assigning error in brief filed in the trial court was a prerequisite to its review. See, e.g., *Hill v. State*, 403 S.W.2d 797 (Tex.Cr.App.1966); *Yarbrough v. State*, 408 S.W.2d 230 (Tex.Cr.App.1966); *Carter v. State*, 408 S.W.2d 507, 508 (Tex.Cr.App.1966); *Short v. State*, 408 S.W.2d 928, 929 (Tex.Cr.App. 1966); *Snowden v. State*, 410 S.W.2d 641, 642 (Tex.Cr.App.1967). Without compliance, it might add, "Nothing is presented for review." See, e.g., *Trevino v. State*, 409 S.W.2d 853 (Tex. Cr.App.1966). Soon the Court began to ascertain whether a brief had been filed within the time prescribed by statute or an extension granted by the trial court. *Bradley v. State*, 414 S.W.2d 673, 674 (Tex.Cr.App.1967). There are, of course, many other variations on the same theme. See additional cases annotated at 610 following Article 40.09, supra, and in 13A Texas Digest, "Criminal Law," key 1130(4).

4. *Johnson v. State*, supra, involved a pro se "supplemental brief" filed first in this Court seeking to raise grounds of error other than those in the brief timely filed in the trial court;

Though rarely articulated, the true reason fresh grounds of error not assigned in the trial court were not properly subject to review by this Court is that otherwise the trial court would be deprived of an opportunity to perform *its* duty and obligation "to consider and decide from the brief whether to ... grant [defendant] a new trial." *Criado v. State*, 438 S.W.2d 557, 558 (Tex. Cr.App.1969). Unwritten in the cases is that practical objective alluded to in the Interpretative Commentary by the late Judge W.A. Morrison, *ante*, p. 2, that is, providing an occasion for trial judges to perceive reversible error and take appropriate action to protect their own "appellate record."

Neither any reason for nor objective of the rule remains viable in cases in which appeal was filed on or after September 1, 1981. See, § 149, Acts 1981, 67th Leg., Ch. 291, p. 820. It is contrary to former Tex.R. Civ.P. Rule 414(n), authorizing amendment and supplementation of briefs "when justice requires upon such terms of the court may prescribe," and current Tex.R.App. Pro. Rule 74(*o*). Since exercise of that authority is discretionary, see cases annotated at 101 ff. following former Rule 414, the matter of amending and supplementing an appellate brief is best left to the courts of appeals.

In the instant cause the Austin Court of Appeals did grant appellant leave to file his supplemental brief and did address the contentions supporting his supplemental grounds of error. *Boutwell v. State*, 653 S.W.2d 100, 101 (Tex.App.—Austin 1983). The Austin Court acted within its express authority, and we denigrate its absolute right in the premises by now treating appellant's grounds as "unassigned error." Opinion at p. 173.

What this Court may have decided in causes coming to it on direct appeal concerning consideration of a ground of error that a trial court had been deprived of determining under a former scheme of things is now passe, and we should so hold.

With that reservation as to procedure and, on the merits while I would abjure expressions about "general rules" and "exceptions" in an extraneous offense context, *Morgan v. State*, 692 S.W.2d 877, 979 (Tex. Cr.App.1985); Opinion of the Court on original submission in this cause, at 13; see Tex.R.Cr.Evid.R 105 and R 403, otherwise I join the opinion of the Court.

TEAGUE, Judge, concurring.

If nothing else, the majority opinion makes one thing clear: The waters regarding the admissibility of extraneous offenses have yet to be purified. They are still murky. Therefore, I only concur in the result.

On original submission, I only concurred in the result that the majority opinion by Judge Clinton reached, namely, that the trial court erred in admitting extraneous offenses into evidence during the guilt stage of the trial of Lester Boutwell, hereinafter referred to as the appellant. I did so because the opinion used too much paint on such a small issue that needed addressing in this case. I also could not join the opinion because, except in an extremely limited sense, it failed to purify the waters that govern the admissibility of extraneous offenses. I now concur in the decision of the majority opinion, that the State's motion for rehearing should be denied, because it is much like the opinion on original submission—it, too, uses too much paint on a small issue; the paint does continue to run, making the subject of when extrane-

the former were found "not properly before this Court for review." *Id.,* at 445. In *Reeves v. State,* 457 S.W.2d 924 (Tex.Cr.App.1970), because no appellate brief had been timely filed in the trial court, one thereafter untimely filed and included in appellate record before being forwarded to the Court did not present grounds to the Court for review; in companion cases of *Jackson v. State,* 449 S.W.2d 242 and 449 S.W.2d

245 (Tex.Cr.App.1969), one brief having been timely filed in the trial court, the Court regarded as untimely a second brief filed by new appellate counsel, noting that a second and unnecessary approval of the record did not amount to an authorization for extension of time to file an appellate brief, *id.,* at 244 and 247. Accord: *Swanson v. State,* 447 S.W.2d 942 (Tex.Cr.App.1969).

ous offenses might be admissible vague, nebulous, and extremely inexplicable.

One reason I write is that although the majority opinion somehow manages to reach the right result, denying the State's motion for rehearing, it makes some statements that, because of what this Court has recently stated and held, are clearly erroneous. However, because these statements do not affect the majority opinion's ultimate, but correct, decision to deny the State's motion for rehearing, I am still able to concur in the result that it reaches. I also write in an effort to get this Court to come up with a general rule that will make what should be a simple subject less complicated.

I will first address some of the erroneous legal statements the majority opinion makes.

The majority opinion states that under this Court's decision of *Coleman v. State*, 632 S.W.2d 616 (Tex.Cr.App.1982), the court of appeals erroneously considered the appellant's contention going to the admissibility of the extraneous offenses: "We agree that under Coleman, supra, appellant's contentions were not properly before the Court of Appeals and thus are not properly before this Court." In light of the change in our appellate court system, effective September 1, 1981, and what this Court has stated and held in recent times, this statement is clearly erroneous.

It is true that this Court held on original submission in *Coleman*, supra, that a new ground of error may not be presented in a supplemental brief in a cause pending *before this Court* on direct appeal, if same had not been presented in the original brief. However, overlooked by the majority opinion in this cause is this Court's opinion in *Coleman* on appellant's motion for rehearing, see *Coleman v. State*, 640 S.W.2d 889 (Tex.Cr.App.1982). Notwithstanding what it had held on original submission, this Court on rehearing went ahead and considered, discussed, and overruled the appellant's contention that had been presented in a supplemental brief.

However, in this instance, the court of appeals considered the appellant's grounds of error without comment directed to the fact that they had been presented in a supplemental brief.

Regardless of the holding in *Coleman*, supra, and its progeny, as seen in *Shepard's Citator*, that holding is inapplicable to this cause because of what a majority of this Court stated and held in *Garrett v. State* (Tex.Cr.App. No. 642–83, June 11, 1986). There, this Court rejected the State's contention that the San Antonio Court of Appeals could not consider a new ground of error presented in an amended brief that was filed after this Court had remanded the cause to that court, "for consideration of appellant's grounds of error [that were then extant]". Quoting from *Carter v. State*, 656 S.W.2d 468, 469 (Tex.Cr.App.1983), in which this Court held that a court of appeals has jurisdiction to entertain unassigned error regardless of the nature of the error in question, this Court acknowledged the following: "After jurisdiction attaches to a particular cause, a broad scope of review and revision has been asserted by appellate courts of this State—one that is still recognized, acknowledged and confirmed by the Legislature." (469). Thus, in *Carter v. State*, supra, this Court reaffirmed the age-old axiom that "Once jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute." In *Garrett*, supra, the Court also held that "according to Article 40.09, § 9 on direct appeal an appellate court is obliged to consider every ground of error it can 'identify and understand,' *Ben-Schoter v. State*, 638 S.W.2d 902 (Tex.Cr.App.1982), especially one that might cause reversal of a judgment of conviction." This Court further held in *Garrett*, supra, that while the cause is pending in the court of appeals, "a brief may be amended or supplemented at any time when justice requires upon such terms as the court of appeals may prescribe ..." Thus, given what this Court stated and held in *Carter*, supra, and *Garrett*, supra, a court of appeals is now free

to review a ground of error that is presented in an amended or supplemental brief, and in fact may review a ground of error that is not even presented in any kind of brief, as its discretion mandates. Therefore, it is not for this Court to recite to a court of appeals what ground or grounds of error it must or must not review on direct appeal regardless of what form, i.e., an original brief, a supplemental, an amended brief, or even not in a brief, the ground of error might be raised.

Furthermore, but as Judge Clinton recently pointed out for the Court in *Garrett v. State,* supra: "Effective September 1, 1981, by virtue of approval of amended Article V, § 5, Constitution of Texas and enactment of amendments to Articles 4.04 and 44.24, and of Article 44.45, V.A.C.C.P., this Court has jurisdiction, power and authority to exercise sound judicial discretion to review decisions of courts of appeals in criminal cases ... Jurisdiction, power and authority to decide an ordinary criminal cause on direct appeal is now vested alone in courts of appeals. Article V, § 6, Constitution of Texas, and Article 4.03, V.A.C.C.P. 'Once jurisdiction of an appellate court is [properly] invoked, *exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute. Carter v. State,* 656 S.W.2d 468, 469 (Tex.Cr.App.1983)' ..." Jurisdiction of this Court under Article 4.04, V.A.C.C.P., is to "review any decision of a court of appeals in a criminal case."

In this instance, on direct appeal, the Austin Court of Appeals chose to exercise its appellate judicial discretion and wrote on the issue that involves the admissibility of extraneous offenses, notwithstanding the fact that the issue was presented by the appellant in a supplemental brief, as was its jurisdictional right to do. The majority opinion is thus erroneous when it states that the "appellant's contentions were not properly before the Court of Appeals ..."

The majority opinion holds that "we will treat these grounds of error as unassigned error ..." As previously pointed out, this Court is not now a de novo reviewing appellate court. In petitions for discretionary review, its function is to review the decision of the court of appeals. See *ante.* Thus, this Court has no authority to "treat these grounds of error as unassigned error"; its jurisdiction is limited to reviewing the decision of the court of appeals and not to determine what is and what might not be unassigned error, because the latter in this instance was exclusively for the Austin Court of Appeals, and not this Court, to decide what might be unassigned error.

The majority opinion holds that "Fundamental unfairness and considerations of due process involved in this particular case require our attention." Is this invoking and applying Federal Constitutional law to this cause? However, the admissibility of extraneous offenses is not a subject of review in a federal court of law by way of habeas corpus. See *Gephart v. Beto,* 441 F.2d 319 (5th Cir.1971). On the other hand, if the majority opinion's holding means that under the Texas Constitution's due course of law clause, the issue of the admissibility of extraneous offenses is now of State Constitutional dimension, then that is a breath of fresh air coming from this Court, and, if that is the case, and this cause was on direct appeal to this Court, or was before this Court pursuant to the provisions of Art. 11.07, V.A.C.C.P., I would agree with the majority opinion that such should be reviewed as unassigned error in the interest of justice because for purposes of the Texas Constitution the erroneous admission of extraneous offenses is a violation of the due course of law clause of the Texas Constitution.

Why it has been so difficult for this Court in recent times to come up with a sound general rule which trial judges, prosecuting attorneys, and defense attorneys might live with when it comes to the admissibility of extraneous offenses is beyond my comprehension.

It appears from past decisions of this Court that when it came to admitting extraneous offenses, this Court would open the gate and let the horses run loose for a

period of time, but after the horses had done much damage this Court would then order them corralled.

Many of us first witnessed this swinging of the pendulum in *Hafti v. State*, 416 S.W.2d 824 (Tex.Cr.App.1967), in which this Court implicitly said for the first time in many years: "Whoa!!!" But almost before the ink was dry on *Hafti*, supra, this Court then said: "Let the horses run again." And they did for several years.

It got to the point where a defendant was afraid to plead not guilty, see *Vaughn v. State*, 530 S.W.2d 558 (Tex.Cr.App.1976); was afraid to present any kind of defense, see *Hernandez v. State*, 532 S.W.2d 612 (Tex.Cr.App.1976); prayed that the State's case was not one based upon circumstantial evidence; and was even afraid to cross-examine a complaining witness, see *Caldwell v. State*, 477 S.W.2d 877 (Tex.Cr.App.1972). Cf. *Ortega v. State*, 462 S.W.2d 296 (Tex.Cr.App.1970), in which defense counsel was successful in keeping extraneous offense testimony out of the guilt stage of the trial. However, this successful effort was short-lived because the extraneous offense testimony became admissible at the punishment stage of the trial in the form of "reputation testimony."

Obviously, defense counsel of this State were often confused by what strategy he could invoke to prevent his client from being tried as a criminal in general. Cf. *Gillon v. State*, 491 S.W.2d 893 (Tex.Cr.App.1973).

However, but as occurred in the past, a change in this Court's personnel caused the pendulum to swing back—this time restricting the admissibility of extraneous offenses. Reversals became the talk of the town. See *Ford v. State*, 484 S.W.2d 727 (Tex.Cr.App.1972); *Riles v. State*, 557 S.W.2d 95 (Tex.Cr.App.1977). In *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972), this Court even went so far as to give the bench and bar a general rule and exceptions to the rule to go by.

But, again through changes of personnel on the Court, the rule and the exceptions set out in *Albrecht v. State*, supra, have been replaced with more general rules and more exceptions. See, for example, *Robinson v. State*, 701 S.W.2d 895 (Tex.Cr.App.1985); *Plante v. State*, 692 S.W.2d 487 (Tex.Cr.App.1985); *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1983); *Moore v. State*, 700 S.W.2d 193 (Tex.Cr.App.1985). Approximately thirteen years after *Albrecht*, supra, was decided, the bench and bar of this State were informed that "The list of 'exceptions' to the 'general rule' of inadmissibility of extraneous transactions contained in *Albrecht v. State*, supra, is exemplary rather than exhaustive." *Williams*, supra; *Morgan v. State*, 692 S.W.2d 877 (Tex.Cr.App.1985). Today, the bench and bar are told that "When the defendant denies the act or relationship or undermines the State's case, then there is need for such evidence to shore up some part of the State's case ..." I suppose what the majority opinion means is that it is now time to open the gate and let the horses run loose again.

Today's opinion thus does not in my view "purify the murky waters of extraneous offenses". *Robinson v. State*, supra, (Clinton, J. Opinion joining judgment of the Court.)

Because I have found no better general rule than the one I proposed in the dissenting opinion that I filed in *Dickey v. State*, 646 S.W.2d 232 (Tex.Cr.App.1983), and because, as Judge Clinton implicitly pointed out in the opinion that he filed in *Robinson*, supra, the present view of this Court towards the admissibility of extraneous offenses actually consists of not one view but possibly three of four different views, depending on the respective judges, I will continue to subscribe to the view that "where the State has presented through its witnesses a clear, unblemished, and unmarred picture of the offense for which the accused is on trial, and the accused only injects into the case the defense of alibi, any extraneous offense is inadmissible." *Dickey*, supra, at 241. This comports with what this Court stated in *Hafti v. State*, supra, almost twenty years ago: "[I]f the testimony of the state leaves no question

as to intent or identity of the defendant, proof of an independent crime is not admissible. Also, where there is positive testimony to support the state's case, proof of other independent offenses is not admissible." The rule that I propose can be applied to both sex type and non-sex type cases.

Why should there be a different rule simply because of the type of offense the accused is on trial for allegedly committing? If extraneous offenses are admissible, they are admissible regardless of the type offense the accused is on trial for committing. The majority opinion, however, appears to subscribe to the view that "we continue to recognize a narrow exception for sex offenses to permit admission of similar extraneous sex offenses which occurred between the minor complainant and the accused." Thus, once again, the bench and bar are treated to a new rule: "Extraneous offenses are inadmissible unless they are relevant to a material issue in the case and the relevancy value of the evidence must outweigh their inflammatory or prejudicial potential." Conscientious trial judges of this State: Lots of luck in deciding when to admit extraneous offenses.

Despite whatever efforts the author of the majority opinion might have made to purify the extraneous offense waters, a close and careful reading of the majority opinion makes it obvious that he does not succeed in sanitizing the waters of the law of extraneous offenses. Fortunately, however, the majority opinion reaches the correct result in denying the State's motion for rehearing. Thus, all of us should be grateful at least for that decision.

For the above and foregoing reasons, I only concur in the result reached.

MILLER, Judge, concurring.

I join the majority opinion in its handling of the admissibility of extraneous offenses.

I write only to question the continued viability of cases such as *Coleman v. State,* 632 S.W.2d 616 (Tex.Cr.App.1982) at least in so far as they sponsor a blanket rule that grounds of error raised in supplemental brief are not properly before an appellate court.

In this case the Austin Court of Appeals granted appellant permission to file his supplemental brief containing five new grounds of error and addressed those grounds of error. The motivation of the Austin Court of Appeals is commendable. Originally this case was a direct appeal to the Court of Criminal Appeals. In 1981 it was transferred to the Austin Court of Appeals when that court, as well as all of the other intermediate appellate courts in Texas, gained criminal jurisdiction. The case had still not been submitted[1] to the Austin Court of Appeals by 1983. In this interim three-year period of time some 50 volumes of West Publishing Company's Southwestern Reporter Second Edition were published. They naturally contained numerous cases involving the law of extraneous offenses.

While the Austin Court of Appeals was not obligated to allow the filing of a supplemental brief containing new grounds of error it chose to do so. Having chosen to do so and having granted permission to the appellant to raise new grounds of error, the Austin court quite properly acquired jurisdiction to dispose of these grounds.[2] This is a far different situation from that in which appellant seeks to force additional grounds of error onto an appellate court against its will by the filing of a supplemental brief. In such a situation, *Coleman,* supra, has merit.

Therefore, I do not

"agree that under *Coleman,* supra, appellant's contentions were not properly before the Court of Appeals and thus are

---

1. "Submitted" refers to the movement of a case from the office of the clerk of an appellate court to the judges of the appellate court for disposition. Submission is normally done simultaneously with oral argument, if requested by the parties.

2. It is worthy of note that nothing in the new Texas Rules of Appellate Procedure, effective September 1, 1986, prohibits such an action.

not properly before this Court." (Opinion, p. 173.)

However, since the majority opinion does reach the grounds of error and correctly analyzes and disposes of them, I join the remainder of the majority opinion.