Patrick Logan
**MONTGOMERY, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 05–87–00677–CR, 05–87–00678–CR.

Court of Appeals of Texas,
Dallas.

Sept. 6, 1988.

For majority opinion of the Court,
see 760 S.W.2d 323.

R. Kristin Weaver, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before HOWELL, LAGARDE and KINKEADE, JJ.

HOWELL, Justice, dissenting.

I must dissent from the majority's rote application of *Boutwell v. State*, 719 S.W.2d 164 (Tex.Crim.App.1986) (on reh'g) and misapplication of *Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App.—1988) (on reh'g). For the reasons that follow, I believe that appellant's conviction should be reversed and a new trial ordered.

Appellant was charged in two indictments with the offenses of indecency with a child under the age of 17 years. *See* TEX.PEN.CODE ANN. § 21.11(a)(1) (Vernon 1974). The child complainants named in the indictments were appellant's two minor daughters aged eight and five at the time of the alleged offenses. Each child testified that appellant placed his hand on her genital area.

During the State's case in chief, appellant's ex-wife testified at length. She testified that appellant often walked about the home naked with an erection in the presence of the two young complainants. Appellant's trial counsel objected vigorously on the grounds that this testimony constituted inadmissable evidence of an extraneous offense. The objection was overruled by the trial court and the testimony was allowed.

The majority holds that the "probative value of the evidence outweighed any possibility of prejudice" on grounds that the evidence revealed the "familial relationship which provided the context of the charged offense." The majority's analysis is cursory; a closer examination of the underlying principles reveals that, if the *Boutwell* analysis be correctly applied, the extraneous offense was improperly admitted.

THE EVIDENCE WAS SUPERFLUOUS

The *Boutwell* rationale for admission of extraneous sexual offenses between the complainant and the defendant was because the "evidence from a child, *standing alone*, might be considered implausible or incredible." *Boutwell*, 719 S.W.2d at 175. [emphasis added]. However, such was not the case here. We do not have the children's testimony "standing alone." There was testimony from appellant's ex-wife that when she bathed the younger girl, the child became agitated when the ex-wife approached her genital area. This little girl also showed signs of a yeast infection and had an odoriferous vaginal discharge.

A caseworker from the Department of Human Services testified that these children displayed classic signs common to sex abuse victims. Her testimony tended to shore up the State's case and make the children's accusation more plausible. *See Boutwell*, 719 S.W.2d at 178 (extraneous

offense evidence is admissible when the State's case needs to be shored up). In the opinion of this writer, the testimony that appellant walked about the house nude with an erection does not "explain the charged act and ... [and provide a view of] such an unnatural act in light of the relationship of the parties." *See Boutwell*, 719 S.W.2d at 175. In fact, the ex-wife testified that appellant walked about the house naked not for sexual gratification, but as an anatomical lesson to the children. She testified that his conduct was intended to show the children that nudity was nothing to ashamed of and to instruct the children as to the physical characteristics of the male. Her testimony negates the inference that he did so in pursuit of sexual pleasure.

Although the great majority of society would doubtless condemn such display of nudity, we must acknowledge that a significant segment adamantly argues that there is nothing wrong with nudity. We also know that primitive societies around the world have accepted nudity as normal. In final analysis, the brand of "unnatural" reflects no more than the contemporary attitude of the majority of society in this corner of the world.

Properly viewed, the probative value of the extraneous offense evidence under challenge was slight, particularly inasmuch as no effort was made to show that it occurred close in time to the indicted offenses.

On the other hand, it was, beyond doubt highly prejudicial to defendant for the very reason just mentioned; it painted him as a person whose views of nudity and the display thereof were far out of the social mainstream. In short, the shock value far exceeded the evidentiary value to the effect that the indicted offenses actually occurred.

### THE EVIDENCE WAS ADMITTED PREMATURELY

The evidence of the extraneous offense was admitted on the first day of trial through the second witness for the State. At this point, neither complainant had testified or had been in any manner impeached.

*Boutwell* expressly states that "extraneous sex offenses between the complainant and the defendant are not admissible until the defendant denies the act or undermines the credibility of the complainant in some fashion." *Boutwell*, 719 S.W.2d at 178. *See also Mannie v. State*, 738 S.W.2d 751, 757 n. 2 (Tex.App.—Dallas 1987, pet. ref'd) (defendant's plea of not guilty does not undermine State's case). Following *Boutwell*, premature admission of extraneous offenses has been held to be reversible error. *See Cruz v. State*, 737 S.W.2d 74, 77–78 (Tex.App.—San Antonio 1987, no pet). Although some courts of appeals have allowed premature admission of extraneous offenses on the theory that, because defendant later undermined the State's case, the error was harmless, see *Box v. State*, 730 S.W.2d 862, 864 (Tex.App.—Texarkana 1987, no pet.); *Mannie*, 738 S.W.2d at 757 n. 2, this writer urges that *Boutwell* should be strictly followed on this point. *Mannie* pointed out the danger of allowing extraneous offense evidence before credibility of the complainants is attacked:

> [T]o admit evidence of an extraneous offense at the outset of trial may force the defendant to make a more desperate attack than he would have otherwise chosen to make.

*Mannie*, 738 S.W.2d at 757 n. 2.

*Boutwell* represents a very "narrow" exception to the well established rule prohibiting admission of extraneous offenses. *Boutwell*, 719 S.W.2d at 177. The majority opinion, in the opinion of this writer, constitutes a wedge calculated to split wide that which the Court of Criminal Appeals has labelled as a narrow exception.

### THE OFFENSES ARE DISSIMILAR

Appellant was indicted for the offense commonly known as "fondling", i.e. placing his hand on the genitals of the minor complainant. The extraneous offense is commonly known as indecent exposure, i.e., exposing his genitals. To this writer, a question exists whether the extraneous offense was "an act which occurred between the minor complainant and the defendant." *Boutwell*, 719 S.W.2d at 175. *Boutwell*

allowed admission of extraneous sex offenses to convey to the jury the fact that the charged offense did not occur "in a vacuum as a one-time act." *Id.* Such language strongly implies a requirement that the extraneous offense be identical to the charged offense.

The cases decided in the wake of *Boutwell* tend to bear this out. *See, e.g., Meyers v. State,* 737 S.W.2d 6, 9 (Tex.App.—Corpus Christi 1987, no pet.) (*Boutwell* permits evidence of prior *sexual assaults* on the minor complainant); *Smith v. State,* 719 S.W.2d 402, 403 (Tex.App.—Houston [1st Dist.] 1986, no pet.) (exception permits admission of *similar sex offenses* ). This dissent has not located a case wherein evidence of indecent exposure was admitted in the trial of a defendant charged with fondling. The question is this: How similar must the extraneous offense be? One might easily envision admission of evidence that defendant used indecent, profane, or even more pointedly, sexually explicit language in the presence of the complainants in a public place in violation of TEX.PEN. CODE ANN. § 42.01(a)(1) (Vernon Supp. 1988). To guard against enlargement of the admittedly narrow *Boutwell* rule, the extraneous sexual offenses, in order to be admissible, should be substantially the same as the charged offense.

## THE SOURCE OF THE EXTRANEOUS OFFENSE EVIDENCE

The instant case differs greatly from *Boutwell* and its progeny for another reason: the source of the extraneous offense evidence was not the complainants themselves but the ex-wife. The decisions applying *Boutwell* have all dealt with extraneous offense testimony emanating from the complaining witnesses themselves. Because the evidence here came from the ex-wife, its effectiveness for the purpose of placing the charged offense in the context of the relationship between complainant and offender was substantially diluted; it accomplished little, if anything, other than proof that appellant was a bad man, a person with a propensity to engage in criminal conduct. If we are to restrict extraneous offense evidence to its declared purpose of proving an unnatural relationship between the criminal defendant and his alleged victim, we must require that such evidence emanate only from the complainant.

On a related note, it is quite obvious that the ex-wife could not be considered an objective, unbiased witness. There was much acrimony stemming from the parties' divorce. The ex-wife's testimonial motive coupled with the complete lack of testimony *from the complainants themselves* that appellant ever walked nude before them with or without an erection drastically reduces the value of the extraneous offenses as proof that the indicted offenses actually occurred.

For the reasons stated above, I believe that the majority has erroneously upheld the admission of the extraneous offenses. I would reverse and remand on that point.

## THE PAROLE CHARGE

The majority has found that beyond a reasonable doubt, appellant has not suffered any harm resulting from the unconstitutional jury charge. *See Rose v. State,* 752 S.W.2d at 552 (on reh'g). The majority is able to reach this conclusion despite a presumption that the jury considered the *existence* of the parole laws. *Montgomery v. State,* 760 S.W.2d 323, 327 (Tex.App.—Dallas 1988). The conclusion is not warranted. If the jury considered the *existence* of parole laws, even without consideration of the manner of their *application* to appellant, there is a reasonable probability that appellant received a harsher sentence than had the existence of parole not been considered.

This case differs markedly from *Rose* in that our appellant had no prior felony convictions and two honorable discharges from the United States Marines. Furthermore, the trial court in the case *sub judice* did not give the "curative instruction" relied upon by the Court of Criminal Appeals in *Rose. See Rose,* 752 S.W.2d at 554. This writer is unwilling to perform the judicial contortions of the majority to hold the instruction harmless.

For the reasons stated, I dissent. The case must be reversed and remanded.