**Gerald KELLY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–90–090–CR.**

Court of Appeals of Texas, Waco.

March 11, 1992.

Discretionary Review Refused June 17, 1992.

Kathryn J. Gilliam, Waco, for appellant.

John W. Segrest, Crim. Dist. Atty., Beth Toben, Asst. Dist. Atty., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Gerald Kelly was convicted by a jury of the offense of aggravated sexual assault of a nine-year-old child [1] and assessed twenty-five years in prison.[2] He complains that the court erred when it allowed evidence of extraneous acts of misconduct that occurred between him and the minor complainant, allowed evidence of extraneous acts of misconduct that occurred between him and A.B., a nine-year-old friend of the complainant, and denied him the opportunity to impeach the complainant. He also asserts that the cumulative effect of all of the improperly-admitted extraneous acts was harmful.

The indictment charged Kelly with intentionally and knowingly using the male sex organ to penetrate the female sex organ of L.H., a child fourteen years of age or under, who was not his spouse. L.H. testified that Kelly "put his penis up inside [her]." Her testimony was corroborated by the doctor who examined her and reported that he found evidence of recent penetration. The doctor also said that L.H. stated to him that "Gerald put his penis in me." While L.H. was testifying on direct examination, the State questioned her about Kelly's conduct on other occasions, including other instances of penetration, attempts to penetrate her, exposing himself to her, and showing her suggestive movies. Kelly made a timely objection and was granted a "running objection"[3] to all the testimony of extraneous offenses, which the record reveals was sufficient to satisfy the requirements of Rule 52 in the context in which made.[4] On cross-examination, Kelly attempted to discredit L.H. by asking her if she was mad at him for not giving her some food she wanted and inquired whether she had ever called a teacher a "bitch."

L.H. also testified about Kelly's attempt to assault A.B., her friend. The State presented A.B. as a witness, even though she was not a witness to the offense for which Kelly was indicted. A.B. testified about Kelly's exposing himself to her and L.H., his attempt to assault her, and his showing her a "nasty movie." Again, Kelly made a timely objection and was granted a "continuing objection" to evidence of extraneous offenses, which the record reveals was sufficient to satisfy the requirements of Rule 52 in the context in which made.[5]

In points one through three, Kelly asserts that all of the evidence of extraneous offenses was improperly admitted. In the landmark opinion of *Boutwell v. State,* the Court of Criminal Appeals clarified the reasons for (1) the rule allowing evidence of similar extraneous sex offenses between the defendant and a minor complainant and

---

1. *See* Tex.Penal Code Ann. § 22.021 (Vernon 1989).

2. *See id.* at § 12.32 (Vernon Supp.1992).

3. *See Ethington v. State,* 819 S.W.2d 854, 858–59 (Tex.Crim.App.1991).

4. *See id.* at 859; *Montgomery v. State,* 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991) (on rehearing); Tex.R.App.P. 52.

5. *See id.*

(2) the Court's refusal to expand the exception to allow evidence of extraneous sexual offenses between the defendant and a third person not involved or connected to the offense charged.[6] Extraneous offenses involving conduct between the defendant and a minor complainant can, when properly analyzed for relevancy and prejudice, support the credibility and plausibility of the minor complainant's testimony and are evidence of the probability that the defendant did indeed commit the offense with which he is charged.[7] Thus, the court recognized and continued a "narrow exception for sex offenses to permit admission of similar extraneous sex offenses which occurred *between the minor complainant and the accused.*"[8] The State's need to support the credibility of a child-witness can serve as one of the "other purposes" for admission of such conduct under Rule 404(b).[9] This "other purpose" allows admission of "similar acts of misconduct perpetrated by [one standing *in loco parentis* ] against his own child ... if in logic [they] show a lascivious attitude (relevant to culpable intent) and a willingness to act on it (relevant to prohibited conduct) that a jury might be otherwise loathe to attribute to a parent toward his child."[10]

As a prerequisite, however, no such evidence may be admitted unless and until the defendant has denied the relationship or has undermined or impeached the complainant in some way.[11] This is a recognition of the effect of Rule 403 on extraneous offenses, prohibiting their admissibility if more prejudicial than probative.[12] Until the defendant has denied the relationship or impeached the complainant, such offenses have been deemed more prejudicial than probative.[13]

Prior to adoption of the Rules of Criminal Evidence, the Court used a two-prong test: (1) Is the transaction relevant to a material issue in the case? (2) Does the relevance value of the evidence outweigh its inflammatory or prejudicial value?[14] *Boutwell* notes that the "exception" for offenses against the complainant simply follows the admissibility analysis of *Williams.*[15] As we have stated, the *Williams* test is, in substance, applied through Rules 402, 403, and 404(b).[16] It would follow that the analysis of all extraneous offenses should be conducted in the same manner under Rules 402, 403, and 404(b).[17] The identity of the person against whom the offense was committed should only play a role in a determination under Rule 404(b) of whether an "other purpose" justifies admissibility.[18]

In *Albrecht v. State*, the Court listed the pre-rule factual contexts in which evidence of extraneous offenses might be admissible.[19] The *Albrecht* list is exemplary, not exclusive.[20] Likewise, the enumeration in Rule 404(b) is not an exclusive list of "other purposes" for which evidence of "other crimes, wrong, or acts" can be admitted, as demonstrated by the inclusion of the

---

6. *Boutwell v. State*, 719 S.W.2d 164, 174–79 (Tex.Crim.App.1985) (decided prior to the effective date of the Rules of Criminal Evidence).

7. *Id.* at 178.

8. *Id.* (Emphasis in original).

9. TEX.R.CRIM.EVID. 404(b).

10. *Montgomery*, 810 S.W.2d at 394.

11. *Id.* at 397.

12. *Id.*

13. *Id.*

14. *Williams v. State*, 662 S.W.2d 344, 345–47 (Tex.Crim.App.1983).

15. *Boutwell*, 719 S.W.2d at 178; *Williams*, 662 S.W.2d at 346.

16. *See Massey v. State*, 826 S.W.2d 655, at 658 (Tex.App.—Waco 1992).

17. TEX.R.CRIM.EVID. 402, 403, 404(b).

18. *Id.* at 404(b).

19. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim.App.1972) (needed to prove identity, intent or guilty knowledge, malice or state of mind, and motive—"other purposes" now incorporated into Rule 404(b)).

20. *Turner v. State*, 754 S.W.2d 668, 672 (Tex. Crim.App.1988); *Boutwell*, 719 S.W.2d at 174.

phrase "such as" in the rule.[21]

The State urges us to declare the evidence of misconduct between Kelly and L.H. to be part of the *res gestae* or background of the offense. Although *Boutwell* recognized that such offenses might have been admitted as part of the background or context of an offense, *Mayes v. State* clearly proscribes admissibility of extraneous offenses as "background" evidence.[22] Generally the state is entitled to introduce evidence of the facts and circumstances of an offense, i.e., the "background evidence."[23] The admission of character evidence on the rationale that it is background evidence helpful to a jury conflicts with the proscription of Rule 404(b)—it is not admissible as an "other purpose" under the rule.[24]

Evidence of extraneous offenses involving conduct between the defendant and third parties is exactly what the rule forbids—propensity evidence designed only "to prove the character of the defendant in order to show that he acted in conformity therewith."[25] Although evidence of such offenses may, when properly analyzed under Rules 402, 403, and 404(b), be admitted for another reason[26], it is clear that the "probability" and "unnatural attention" justifications will not support the admission of extraneous offenses between the defendant and third parties.[27]

Here, the State was permitted to introduce evidence of extraneous acts between Kelly and L.H., the complainant, on direct examination before Kelly denied the relationship or impeached L.H. In allowing the testimony at that time, the court erred. Additionally, the State was allowed to elicit propensity evidence from L.H. and from A.B. about extraneous offenses committed by Kelly against A.B. without a showing of an "other purpose" under Rule 404(b).[28] We hold that such evidence was not relevant as proof that Kelly committed the offense with which he was charged except under a propensity rationale, for which it was not admissible.[29] The court erred in allowing such testimony. We sustain points one through three.

■ In point four, Kelly complains that, after L.H. denied it during cross-examination, the court refused to allow him to impeach her by showing that she had called a teacher a "bitch." He also complains of the court's refusal to allow him to impeach her testimony about an alleged conversation between L.H. and a girl named "Carla." In each instance, the court sustained an objection by the State that the attempted impeachment was directed to an impermissible collateral matter.

Kelly correctly states the test of whether a matter is collateral for impeachment purposes: whether the evidence could have been used for any other purpose, independent of the contradiction.[30] Because Kelly would not have been entitled to admission of the evidence of L.H.'s actions at school and any conversation she may have had with "Carla", if offered by him as part of his case tending to establish his plea, it was not available to him as impeachment evidence.[31] Additionally, as the State points out, Rule 608 prohibits evidence of specific instances of conduct for the purpose of attacking or supporting the credibility of a witness.[32] Thus, we determine that the

---

21. Tex.R.Crim.Evid. 404(b).

22. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex.Crim. App.1991); *Burns v. State*, 556 S.W.2d 270, 282 (Tex.Crim.App.1977), *cert. denied*, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977).

23. *Mayes*, 816 S.W.2d at 85.

24. *Id.* at 88; Tex.R.Crim.Evid. 404(b).

25. *Boutwell*, 719 S.W.2d at 177; Tex.R.Crim.Evid. 404(b).

26. *See Boutwell*, 719 S.W.2d at 176 (recognizing that such offenses may be admitted under the *Williams* analysis).

27. *Id.* at 179.

28. *See* Tex.R.Crim.Evid. 404(b).

29. *See Turner*, 754 S.W.2d at 675.

30. *Gutierrez v. State*, 764 S.W.2d 796, 798 (Tex. Crim.App.1989).

31. *See Bates v. State*, 587 S.W.2d 121, 133 (Tex. Crim.App.1979).

32. *See* Tex.R.Crim.Evid. 608(b).

court correctly excluded the evidence by which Kelly sought to impeach L.H. We overrule point four.

■ Having found error, we must determine if the error contributed to the conviction or punishment.[33] This analysis involves tracing the impact of the error. We focus on the error and its effect on the process whereby the jurors apply law to facts to reach a verdict, rather than on the result.[34] We examine whether the trial was essentially a fair one.[35] If the error was of a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming the overall evidence might have been, then the conviction is tainted.[36] The procedure is: isolate the error and all its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted.[37] In isolating the error and its effects, we consider the source of the error, the nature of the error, whether and to what extent it was emphasized by the state, its probable collateral implications, and other considerations suggested by the facts of the case.[38] In determining whether a rational trier of fact might have reached a different conclusion, we consider how much weight a juror would probably place upon the error and its probable impact on the jury in light of the existence of the other evidence.[39] Where the error was induced by action of the prosecution, we must determine whether declaring the error harmless would encourage the State to repeat it with impunity.[40]

We are obligated to examine the record in a neutral, impartial, and even-handed manner, not in the light most favorable to the verdict, focusing not on the outcome nor the weight of the other evidence but on whether the error might have prejudiced the jurors' decision making process.[41]

■ A review of the record compels us to the conclusion that Kelly was harmed by the error in admitting evidence of extraneous sex offenses against A.B. Evidence of this type is presumptively inadmissible under the Rules of Criminal Evidence.[42] It is "inherently prejudicial." [43] It constituted improper bolstering of L.H.'s testimony. In the charge, the court admonished the jury that it should consider the extraneous offenses only "for purposes of explaining the circumstances of the charged act and the relationship between the parties, if any, in connection with this offense, if any, alleged against the defendant...." Because the term "relationship between the parties" was not limited to Kelly and L.H., the jury was free to consider the relationship between Kelly and A.B.[44]

The State argued to the jury:

Think about [A.B.] Think long and hard about [A.B.] [L.H.] told you that there were times when he exposed himself to her, two times, said that he pulled it out and held it.... And she said, 'One time I was alone in [name omitted]'s room and the other time I was with ...' Who? '... [A.B.]'

And [A.B.] got on the stand and what was her first thing that had ever happened with [Kelly]? Exposure. 'He held it and showed it to me and [L.H.] was there.' Consistent. Supports her story. If it supports it in any way, doesn't [it] also support the intercourse, the penetration, on the date alleged.

They also told you about the videotape that he showed them. Think what they said about it. 'The people were naked.' One of them said they were doing 'nasty

33. *See* Tex.R.App.P. 81(b)(2).

34. *See Harris v. State,* 790 S.W.2d 568, 588 (Tex. Crim.App.1989).

35. *See id.*

36. *See id.*

37. *See id.*

38. *See id.,* 790 S.W.2d at 587.

39. *See id.*

40. *See id.*

41. *See Griffin v. State,* 815 S.W.2d 576, 580 (Tex.Crim.App.1991); Tex.R.App.P. 81(b)(2).

42. Tex.R.Crim.Evid. 404(b).

43. *Montgomery,* 810 S.W.2d at 388.

44. *See Turner,* 754 S.W.2d at 674.

stuff,' the other one said they were doing 'mushy stuff.' Again, it supports everything [L.H.] told you.

And then think of the third thing. This incident with both girls there and he told them not to tell. When [A.B.] walked down the hall and saw [Kelly] on top of [L.H.] trying to get her legs apart.

The nature of the error was the admission of testimony about extraneous sex offenses against a third party. The source of the error was the state's offering the testimony. As we have shown, the state emphasized the error at the guilt-innocence stage, unduly calling the jury's attention to the inadmissible testimony.[45] Thus, the error was of such a magnitude that it probably disrupted the jurors' orderly evaluation of the evidence.[46] We find that Kelly was harmed by the admission of the improper evidence of extraneous sex offenses against A.B.[47]

The State urges us to follow the example of *Jaramillo v. State*, where the Fort Worth Court of Appeals found error to be harmless when evidence of extraneous sex offenses committed against the complainant were improperly admitted during the state's case-in-chief, i.e., before the credibility of the complainant had been questioned, but became admissible after cross-examination because the defendant questioned her credibility.[48] Although this logic might render harmless the errors in admitting L.H.'s testimony too early, we do not believe that the error in admitting the testimony of offenses against A.B. can be considered to be harmless beyond a reasonable doubt. Having so found, we do not reach the question of harm resulting from the untimely admission of extraneous offenses against the complainant.

We reverse the judgment and remand the cause for a new trial.

---

**45.**  *See Anderson v. State*, 817 S.W.2d 69, 72–73 (Tex.Crim.App.1991).

**46.**  *See Harris*, 790 S.W.2d at 588.

**47.**  *See id.;* Tex.R.App.P. 81(b)(2).

**48.**  *See Jaramillo v. State*, 817 S.W.2d 842, 845 (Tex.App.—Fort Worth 1991, pet. ref'd).