Sterling v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-111-CR

        JOHNNY STERLING,
                                                                                                        Appellant
        v.

        THE STATE OF TEXAS,
                                                                                                        Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 91-61-C
                                                                                                    

O P I N I O N
                                                                                                    

          A jury convicted Johnny Sterling of the aggravated sexual assault of his eleven-year-old
daughter—the act allegedly occurring on October 16, 1990—and assessed a life sentence after
finding that he had a prior conviction for aggravated assault. The State proved that Sterling had
sexually assaulted her twice before October 16. Sterling contends his attorney was ineffective
when he failed to object to the extraneous sexual acts. We reject that contention and affirm the
judgment.
OTHER ACTS
          Evidence of the extraneous sexual acts was admitted through several sources. Dr. Nickel,
who performed the rape examination, testified that the girl told her that her "Daddy" had sexual
intercourse with her five to ten times. The court admitted this evidence over a hearsay objection. 
Dr. Nickel also said the victim's vaginal opening was similar to an adult female's, which was
consistent with repeated sexual intercourse.
          According to the victim, her father first sexually assaulted her shortly after the school year
began. She also described two other acts of intercourse, the last being the one alleged in the
indictment—October 16. James, the girl's fifteen-year-old brother, saw his father having sex with
her on October 15. Johnny, her younger brother, observed the October 16 act.
WAIVER
          Sterling waived any complaint about the extraneous acts when he failed to object to their
admission. See Tex. R. App. P. 52(a); Montgomery v. State, 810 S.W.2d 372, 387 (Tex. Crim.
App. 1991) (on rehearing). We overrule point one in which he contends the court erred when it
admitted them.
INEFFECTIVE ASSISTANCE
          Sterling's second complaint is that his counsel was ineffective when he failed to object to
the extraneous acts. We must evaluate counsel's actions and possible trial strategy


 in light of the
law governing the admissibility of extraneous sexual acts. 
THE LAW
          In cases involving sexual acts with children, Texas has long recognized a narrow exception
to the general rule that excludes proof of extraneous sexual acts. Battles v. State, 63 Tex. Crim.
147, 140 S.W. 783 (1911). The Court of Criminal Appeals has repeatedly recognized and
reaffirmed the exception. Montgomery, 810 S.W.2d at 397; Boutwell v. State, 719 S.W.2d 164,
178 (Tex. Crim. App. 1985) (on rehearing). Extraneous acts are admissible to "aid the jury in
properly evaluating the `inherently questionable testimony of a minor against an adult responsible
for his welfare'." Boutwell, 719 S.W.2d at 178-79. We discussed the continued viability of the
exception in Kelly v. State, 828 S.W.2d 162, 163-64 (Tex. App.—Waco 1992, pet. ref'd). A
necessary prerequisite to the admission of extraneous acts, however, is that the defendant must
either deny the charged act or undermine the victim's credibility in some fashion. Montgomery,
810 S.W.2d at 397; Boutwell, 719 S.W.2d at 178. Their probative value usually outweighs any
prejudice. Boutwell, 719 S.W.2d at 178.
HARD CHOICES
          At trial, defense counsel faced a series of hard choices. First, should Sterling testify? He
had a 1989 conviction for aggravated assault and undoubtedly would have undergone a rigorous
cross-examination. Closely tied to this decision was the question whether Sterling should admit
the act or deny that anything ever occurred. Sterling chose not to testify.
          His decision not to testify, coupled with the not-guilty plea, effectively foreclosed the
alternative of admitting the act. Consequently, the only practicable course left was to contest the
State's case by attempting to undermine the credibility of the State's witnesses and that of the
victim through cross-examination. This is what he attempted to do, thereby making the extraneous
acts admissible under established case law. See id.
          Finally, because the extraneous acts would be admissible, should the defense object when
the evidence was offered? Counsel chose not to object. Sterling now contends his attorney was
ineffective because he failed to do so.
DEFENSE CROSS-EXAMINATION
          Dr. Nickel, the first witness called by the State, testified that the victim had a marital-size
vagina, which was consistent with repeated sexual acts, and that the victim mentioned five to ten
sex acts with her father. The State elicited this evidence before any cross-examination by the
defense. During cross-examination, however, the defense suggested that Dr. Nickel was hired by
the State to find evidence of sexual abuse and that the physical evidence of sexual activity—i.e.,
perforated hymen and enlarged vaginal orifice—was consistent with the victim having had sex with
someone other than an adult male. The thrust of the defense's extensive questioning was not only
to undermine Dr. Nickel's credibility, by portraying her as a biased expert who would find
evidence of sexual abuse even if did not exist, but to attack the victim's credibility when she
reported to Dr. Nickel that her father had sex with her five to ten times. The defense's clear
purpose was to undermine the victim's credibility by creating a lingering doubt about whether she
was engaging in sexual acts with younger males.
          The victim testified next, describing three sexual acts with her father. At the outset of her
cross-examination, defense counsel inquired about her boyfriends. He dropped that line of
questioning, however, when she denied ever having a boyfriend. Counsel then established that
at least eleven people lived in the house with the victim and her family, including her aunt's
boyfriend, and that the victim was possibly angry with her father because of being disciplined by
him. Counsel also asked whether she ever slept with her older brother, James.
          James testified next. Defense counsel questioned him about his sister's boyfriends, but
again abandoned the subject when he denied that she had any boyfriends. He then asked whether
his sister and his aunt's boyfriend ever slept together in the same room. James admitted on cross-examination that he did not like his father when his father was drinking. Counsel was laying the
groundwork for possibly suggesting that the victim's sexual activity was consensual, that she could
have been raped by her aunt's boyfriend, and that James' testimony was affected by bias against
his father.
          The victim's younger brother, Johnny, was the final witness on guilt-innocence. He
testified about observing the act on October 16. He also admitted on cross-examination that he
did not like his father.
          Sterling argues on appeal that the extraneous acts were not admissible because he never
attacked the credibility of the State's witnesses. Of course, to contend otherwise would be to
concede the admissibility of the extraneous acts. The defense's argument on guilt-innocence
reveals the true purpose of its cross-examination—to create a reasonable doubt in the jurors' minds
of whether any act ever occurred. Counsel first asserted that Dr. Nickel was hired to find
evidence of sexual abuse and, no doubt, always did. This could only serve the purpose of
questioning the medical expert's objectivity and credibility. Next, counsel contended that the
children had a grudge against their father, which provided them with a motive to blame their father
for whatever sexual activity the victim had engaged in. This was a blatant allegation that all three
children had lied. Finally, counsel argued that the October 16 act never happened; that the
opening in the victim's hymen could not have been made by an adult penis; and that, if the acts
had indeed occurred in the house with eleven people living there, the State would have had more
eye-witnesses.
          The thrust of the defense's cross-examination is apparent from the outset, and we must
assume that the jury and the court found it so. It was to refute that any act ever occurred by
undermining not only the victim's credibility but the credibility of all the State's witnesses. We
hold that the defense's cross-examination undermined the victim's credibility "in some fashion." 
See Boutwell, 719 S.W.2d at 178. That the jury returned a guilty verdict does not establish that
her credibility was unaffected. Thus, the extraneous acts were clearly admissible. See id. 
          Ineffective assistance of counsel is not to be judged by hindsight. Hawkins v. State, 660
S.W.2d 65, 75 (Tex. Crim. App. 1983). Knowing that his attack on the victim's credibility would
make the extraneous acts admissible, Sterling's lawyer was not ineffective when he decided not
to object to evidence that was admissible. This was a plausible trial strategy. Point two is
overruled.
COMMENT ON FAILURE TO TESTIFY
          During the State's final argument on guilt-innocence, the following occurred:
[PROSECUTOR]
He could call anybody as a witness he wants to, that he thinks is going to help him. 
He could not shake the story of those three children. Do you think an experienced
Attorney cannot get a 15 year old child, or a 12 year old child, or a ten year old child, a
little confused. Any of you could do it, much less a trained Attorney, but what they said
they never varied from what they saw happened. They saw their sister being sexually
assaulted. She knows she was sexually assaulted. He knows she was sexually assaulted.

(Emphasis added). The court sustained an objection that the prosecutor was commenting on the
failure to testify, gave a curative instruction, but refused to grant a mistrial. Sterling's final point
is based on the denial of a mistrial. 
          For the italicized sentence to be a comment on Sterling's failure to testify, the jury
necessarily would have had to interpret it as an allegation that he knew he had assaulted his
daughter and had failed to take the stand to admit it. That would be an unreasonable and
unwarranted interpretation, considering its context, and a reasonable juror would not have
necessarily given it that interpretation. Assuming, however, that the jury would have interpreted
it as a comment on the failure of Sterling to testify, it was a vague and indirect allusion at best and
not so prejudicial that the curative instruction did not remove any harm. See Bower v. State, 769
S.W.2d 887, 907 (Tex. Crim. App. 1989). Accordingly, the court did not err when it refused to
grant a mistrial. See Washington v. State, 822 S.W.2d 110, 118 (Tex. App.—Waco 1991, pet.
granted). Point three is overruled. 
          Affirmed.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice
Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed September 23, 1992
Do not publish